In re DOMESTIC AIR TRANSPORTA-
TION ANTITRUST LITIGATION.

This Document Relates To:
ALL ACTIONS

Master File No. 1:90–cv–2485–MHS.
MDL No. 861.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 7, 1991.

W. Pitts Carr, Carr, Tabb & Pope, Atlanta, Ga., for Mark E. Goldberg, et al., Alfred D. Mathewson, et al., Timothy W. Wolfe, et al., and W. Douglas Langmack, et al.

Judah I. Labovitz, Frances M. Visco, Cohen, Shapiro, Polisher, Shiekman & Cohen, Lawrenceville, N.J., for Lee Dushoff, et al., and Irv Susson.

Allen D. Black, Fine, Kaplan and Black, Philadelphia, Pa., Michael P. Malakoff, Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for Nancy Colbaugh, et al.

Jerry S. Cohen and Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., for Charles Leonard Egan, et al.

Dianne M. Nast, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for Thomas P. O'Donnell, et al.

David J. Berman, Berman, Berkley, Lasky, San Francisco, Cal., for Heather Louise Martinez, et al.

Joseph Goldberg, Carpenter and Goldberg, Albuquerque, N.M., and James S. Bailey, Jr., Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for Kathleen Guthrie, et al.

Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., for Sheldon Gross, et al.

Harold Berger and H. Laddie Montague, Jr., Berger & Montague, Philadelphia, Pa., for Edward P. Marion, et al.

Vance K. Opperman, Richard A. Lockridge, Opperman, Heins & Paquin, and Andrew C. McIntosh, Minneapolis, Minn., for James P. Young et al.

Lynn Lincoln Sarko and Keller Rohrback, Seattle, Wash., for Lisa Fitzpatrick, et al., and Peter D. Joers, II.

Francis O. Scarpulla; Guido Saveri, Saveri & Saveri, San Francisco, Cal., for John W. Morse, et al.

Marc M. Seltzer, and Gretchen M. Nelson, Corinblit & Seltzer, Los Angeles, Cal., William Q. Bird, Steven R. Wisebraum, Atlanta, Ga., for William J. Winslade, et al.

Mark R. Cuker, Jay S. Cohen; and John Philip McCarthy, Philadelphia, Pa., for Robert and Maureen Bernstein, et al.

Edwin C. Schreiber, Keltner & Schreiber, Inc., Los Angeles, Cal., and J. Garrett Kendrick, Long Beach, Cal., for Lee Reinke Bright and Kenneth L. King.

James A. Calhoun, Calhoun, Benzin, Kademos & Heichel, Mansfield, Ohio, for Michael Carey, et al.

Joel C. Meredith, Steven J. Greenfogel, and Daniel B. Allanoff, Meredith & Cohen, Philadelphia, Pa., for Michael L. Cohen.

Jori Bloom Naegele, Thomas R. Theado and Robert D. Gary, Gary, Naegele & Theado, Lorain, Ohio, for Bernard M. Davidson.

Kenneth A. Jacobsen and Richard D. Greenfield, Greenfield & Chimicles, Haverford, Pa., for John Paul Decker, et al.

Richard S. Wayne, Mark A. Ogle, Strauss & Troy, Cincinnati, Ohio and Dianne M. Nast, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for H. Bradley Eden, et al.

Robert A. Skirnick, Wechsler, Skirnick, Harwood, Halebran & Feffer, New York City, for Kenneth A. Elan.

William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, Lancaster, Pa., for Diane Gitman, et al.

Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, Pa., for Dennis T. Gorchov, et al.

Steven M. Kramer, New York City, for Gregory Gordon, et al.

Louis M. Tarasi, Jr., Tarasi & Johnson, Pittsburgh, Pa. and David Berger, Berger & Montague, Philadelphia, Pa., for Charles Henry, et al.

Frederick D. Steinhardt, Mason, Steinhardt, Jacobs & Perlman, Southfield, Mich., for John E. Jacobs.

Harvey Greenfield, New York City, for Harold Kahn.

Mario N. Alioto, Trump Oliveira & Alioto, San Francisco, Cal., for Kenneth L. King.

Mark J. McCarriston, Philadelphia, Pa., for Dee Lim, M.D.

Robert M. Roseman, Rudolph, Seidner, Goldman, Rochestie & Salmon, and Eugene A. Specter, Philadelphia, Pa., for William Lutz, et al.

Warren Rubin and Bernard M. Gross, Gross & Metzger, Philadelphia, Pa., for S. Robert Polis, et al.

John A. Cochrane, Cochrane & Breshnahan, St. Paul, Minn., for Claudia Rybak.

Steven M. Kramer, New York City, for Sandra Sandine, et al.

Eugene A. Spector, Philadelphia, Pa., for Issac Stein, et al.

Hartley B. Martyn, Cleveland, Ohio, for Audray Wiesen, et al.

Alfred G. Yates, Jr. and Nita M. Fandray, Yates and Associates, Pittsburgh, Pa., for Charles Young.

James A. Treanor, III, Dow, Lohnes & Albertson; Mark Leddy, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C.; and Peter Crane Canfield, Terrence B. Adam-

son, Dow, Lohnes & Albertson, Atlanta, Ga., for Airline Tarriff Pub. Co., Inc.

Irving Scher, Weil, Gotshal & Manges, New York City, Andrew Steinberg, Dallas/Fort Worth Airport, Tex., and Michael A. Doyle, Alston & Bird, Atlanta, Ga., for American Airlines, Inc.

Donald L. Flexner, Crowell & Moring, Washington, D.C. and Jefferson D. Kirby, III, Morris, Manning & Martin, Atlanta, Ga., for Continental Airlines, Inc.

Emmet J. Bondurant, II, Bondurant, Mixson & Elmore and John James Varley, Delta Airlines, Inc., Atlanta, Ga., for Delta Airlines, Inc.

Irwin Goldbloom, Latham & Watkins, Washington, D.C., for Midway Airlines, Inc.

S.M. Litvack, Dewey Ballantine, New York City and Joseph Lefkoff, Atlanta, Ga., for Northwest Airlines, Inc.

Joseph B.G. Fay, Morgan, Lewis & Bockius, Philadelphia, Pa., for Pan American World Airways, Inc.

Robert H. Rawson, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio and Lee Trammell Newton, Jr., Jones, Day, Reavis & Pogue, Atlanta, Ga., for Trans World Airlines, Inc.

William T. Coleman, Jr., O'Melveny & Myers, Washington, D.C. and Steve Clay, Kilpatrick & Cody, Atlanta, Ga., for United Airlines, Inc.

Robert C. Heim, Dechert, Proce & Rhoads, Philadelphia, Pa. and David R. Aufdenspring, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for U.S. Air, Inc.

SHOOB, District Judge.

*Pretrial Order No. 3*

Plaintiffs bring these consolidated actions as a class action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages from defendants[1] for injuries allegedly sustained by plaintiffs and members of the class by reason of alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1988). Plaintiffs also request injunctive relief against defendants to restrain them from continued violations of the Sherman Act. Presently before the Court is plaintiffs' amended consolidated motion for class certification. For the reasons stated below, the Court will grant plaintiffs' motion and certify a class pursuant to Federal Rule of Civil Procedure 23.

I. *Introduction*

This action consists of over forty private actions that were consolidated for pretrial proceedings and transferred to this Court by the Judicial Panel on Multidistrict Litigation on November 2, 1990. Pursuant to Pretrial Order No. 2, plaintiffs filed their amended consolidated motion for class certification on January 3, 1991. Defendants submitted their opposition to plaintiffs' motion on March 8, 1991, and included affidavits of defendants' primary expert witnesses. Plaintiffs replied to defendants' opposition on April 15, 1991, and included the affidavit of their chief expert witness, Dr. John C. Beyer.

At defendants' request, the Court ordered a limited evidentiary hearing on the amended motion for class certification to allow the parties the opportunity to present and cross-examine each others' experts. As defendants represented, the primary purpose of the hearing was "to allow defendants the opportunity to challenge Dr. Beyer's methodology, data, and opinions in detail." Defendant's Offer of Proof dated June 11, 1991, at 2; Order dated May 7, 1991, at 8; Defendants' Memorandum in Support of Request for a Limited Evidentiary Hearing dated April 23, 1991, at 2.

---

1. The defendants originally named in this action are Airline Tariff Publishing Company ("ATPC"); American Airlines, Inc.; Continental Airlines, Inc.; Delta Airlines, Inc.; Midway Airlines, Inc.; Northwest Airlines, Inc.; Pan American World Airways, Inc.; Trans World Airlines, Inc.; United Airlines, Inc.; and USAir, Inc. The actions against Continental and Pan Am have been stayed pending resolution of bankruptcy proceedings or contrary order of the Bankruptcy Judges. *See* 11 U.S.C. § 362 (1988). While Northwest and Trans World Airlines have reached proposed settlement agreements, the Court has not yet approved the agreements and, therefore, any decision in this action applies with equal force to the settling parties.

■ The Court conducted a limited evidentiary hearing on the amended consolidated motion for class certification on June 5, 1991. Pursuant to the Court's Order of May 7, 1991, plaintiffs submitted the written direct testimony of their experts, Dr. Beyer and Herbert B. Newberg, in support of their motion for class certification, and defendants submitted the written direct testimony of Drs. Franklin M. Fisher and Gary J. Dorman in opposition to the motion for class certification. At the Court's request, the parties also filed proposed findings of fact and conclusions of law. The Court adopted the experts' statements as direct examination prior to opening statements by counsel.[2] *See* Manual for Complex Litigation Second, § 30.13 [hereinafter MCL 2d]. Defendants then conducted a limited cross-examination of Mr. Newberg and an extensive cross-examination of Dr. Beyer.[3] After plaintiffs declined to cross-examine defendants' experts, the Court permitted defendants a limited further direct examination of Dr. Dorman. The evidentiary hearing concluded with closing arguments by each side.[4]

**2.** The Court also denied defendants' motion to strike the expert testimony of Mr. Newberg. Defendants argued that the testimony consisted of legal conclusions rather than opinion on issues of fact. The Court indicated at the hearing, however, that it would consider only that portion of Mr. Newberg's testimony concerning factual issues and would not consider the legal conclusions or comments on the credibility of other witnesses made by Mr. Newberg. The Court does not rely on any of Mr. Newberg's direct testimony in its decision to certify a class. Rather, any reference to Mr. Newberg's legal opinions is derived from his exhaustive multi-volume treatise on class action practice. *See* H. Newberg, *Newberg On Class Actions* (2d ed. 1985) [hereinafter *Newberg*].

**3.** The Court permitted defendants to depose Dr. Beyer on May 30, 1991, for the purpose of preparing their cross-examination.

**4.** At the conclusion of the limited evidentiary hearing, the Court reluctantly permitted defendants the opportunity to submit supplemental proposed findings of fact and conclusions of law on any issues that were raised at the hearing but were not covered in previous submissions. *See* Transcript of June 5, 1991, Evidentiary Hearing at 195–97. In response, defendants filed fourteen pages of supplemental findings and conclusions and a twenty-four page offer of proof containing Dr. Fisher's response to Dr. Beyer's "new" testimony. In the offer of proof, defendants argue that the Court's refusal to permit defendants to examine Dr. Fisher at the limited evidentiary hearing and the general format of the hearing "contradict[ed] fundamental notions of fairness." Defendants' Offer of Proof dated June 11, 1991, at 2.

The Court is surprised by defendants' continued assertion that they have not been permitted an adequate opportunity to respond to the arguments and evidence presented by plaintiffs. Despite the fact that Rule 23 does not mandate, or even suggest, that the Court conduct an evidentiary hearing on a motion for class certification, the Court scheduled the limited evidentiary hearing at defendants' insistence. Due process does not require *as a matter of right* that defendants be permitted to conduct an unlimited examination of their *own* witnesses after having presented ample evidence of their position via numerous filings, cross-examination, and opening and closing statements. Nor are plaintiffs required to cross-examine defendants' witnesses. While the Court certainly must consider the rights of all the parties in making its determination, it must also proceed in accordance with the requirement of Rule 23 that the class action determination be made "as soon as practicable after the commencement of an action." The Court, therefore, developed an efficient format for the hearing designed to offer each side the opportunity to focus the presentation of expert testimony through the submission of written statements. Furthermore, defendants were permitted to extensively challenge plaintiffs' expert as requested in their motion for a hearing.

Defendants argue vehemently that the "new theories" presented by Dr. Beyer in his direct statement and on cross-examination entitled them to the opportunity to present Dr. Fisher's rebuttal at the hearing, despite plaintiffs' strategic decision not to cross-examine either of defendants' experts. However, Dr. Beyer's testimony on cross-examination did not present any position never before espoused by plaintiffs; he merely expounded on his theories of impact and damage. In arguing that Dr. Beyer has failed to prove the necessary elements of plaintiffs' antitrust claim, defendants ignore the limitation that a determination on class certification is not the result of an examination of the merits of plaintiffs' claims. Rather, the Court must "determine the manner in which the plaintiffs propose[ ] to prove the antitrust violation" at trial and then decide whether they have met their burden of establishing each of the requirements of Rule 23. *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 321 (5th Cir.1978).

Nevertheless, while the Court finds that defendants have already been offered an excess of process and that the material before the Court at the close of the hearing was more than ample to support today's decision, in making its determination the Court has considered defendants' offer of proof in "response to Dr. Beyer's *new*

It is now the task of the Court to determine the propriety of class certification in this action. While the determination requires consideration of many issues, the overriding question before the Court today is whether participants in a massive, nationwide industry are exempted from the purview of the civil antitrust laws of the United States because of their ability to portray the class as so large and the industry as so complex and complicated that an action to hold the participants accountable for the injuries they have caused cannot possibly be brought as a class action. The Court must conduct a thorough examination of plaintiffs' ability to meet the specific requirements of Federal Rule of Civil Procedure 23 in resolving this issue.

## II. *Requirements of Rule 23*

Plaintiffs seek to represent a class defined as follows:

All persons in the United States, who, during the period January 1, 1988, to the present, purchased domestic airline passenger tickets from one or more of the defendant airlines for air transportation on a single defendant airline to and/or from a defendant's hub (as defined in ¶ 23 of Plaintiffs' Second Amended Consolidated Complaint), (but excluding defendants, their parents, subsidiaries and affiliates and the directors, officers, and employees of defendants, their parents, subsidiaries and affiliates, and all governmental entities).[5]

The hubs referred to in the class definition are the airports at Pittsburgh, Baltimore, Dayton, Charlotte, Minneapolis/St. Paul, Memphis, Detroit, Houston, Newark, Atlanta, Cincinnati, Salt Lake City, Chicago (O'Hare), Denver, Dallas/Ft. Worth, Nashville, Raleigh/Durham, St. Louis, Philadelphia, Cleveland, San Jose, Syracuse, and Washington (Dulles).

In order to maintain this case as a class action, plaintiffs must satisfy all the prerequisites of Federal Rule of Civil Procedure 23(a) and at least one of the provisions of Rule 23(b).[6] In its Order of May 7, 1991,[7] the Court found that plaintiffs had satisfied the numerosity, typicality, and adequacy of representation requirements of Rule 23(a).[8] The class action hearing of

---

testimony" (emphasis supplied) and supplemental findings of fact and conclusions of law, as well as plaintiffs' supplemental findings and conclusions and Dr. Fisher's supplemental affidavit. The Court did not consider, however, defendants' reply to plaintiffs' supplemental findings and conclusions filed with the Court on June 28, 1991.

**5.** Plaintiffs have revised their class definition twice since the filing of their original motion for class certification. The act of refining a class definition is a natural outcome of federal class action practice. Rule 23 requires that the motion for class certification be presented to the Court at the earliest practicable date. As a result, a plaintiff's original class definition is often framed on the basis of little, if any, discovery, to be opposed by defendants who have a wealth of information concerning the industry. It is not surprising that plaintiffs have revised the class definition to reflect the progress of discovery.

**6.** Plaintiffs also move for certification based on their request for injunctive relief under Rule 23(b)(2). While there are injunctive and declaratory aspects of the relief that plaintiffs seek, the true nature of this action is defined by the treble damages available for civil violations of the antitrust laws under the Clayton Act. Therefore, the Court must find the action appropriate under Rule 23(b)(3) for it to proceed as a class action. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir.1968) (*Eisen II*), on remand, 50 F.R.D. 471 (S.D.N.Y.1972), *rev'd*, 479 F.2d 1005 (2d Cir.1973) (*Eisen III*), *vacated and remanded on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen v. Carlisle & Jacquelin*).

**7.** In the interest of completeness, the Court's Order dated May 7, 1991, is included as Appendix A.

**8.** The Court deferred ruling on the question of commonality, the final prerequisite of Rule 23(a). Commonality refers to the requirement that questions of law or fact common to the entire class be present to maintain a class action. Typically, allegations such as plaintiffs'. concerning the existence and scope of an alleged conspiracy will satisfy the commonality requirement. In fact, an allegation of price-fixing is often viewed as a central or single overriding issue that will establish a common question. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). However, while it is not necessary that every question of law or fact be common to every class member, commonality will not exist so long as there is a predominance of individual issues. 3 *Newberg* § 18.08 at 463. Similarly,

684

June 5–6, therefore, was limited to questions concerning certification under Rule 23(b)(3).

Federal Rule of Civil Procedure 23(b)(3) authorizes a class action if:

> the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the action.

Thus, in reaching its decision on the propriety of class certification, the Court must determine if questions common to the members of the class predominate over individual issues, and if the proposed class action is superior to other available methods of adjudication.

■ In making the necessary Rule 23(b) determinations, it is generally inappropriate for the Court to consider whether plaintiffs will prevail on the merits of their claim. This prohibition is for the protection of *defendants* as well as plaintiffs.

> [N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.... [A] preliminary determination on the merits may result

in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). The Eleventh Circuit has acknowledged, however, that while it is not proper to reach the merits of a claim when determining class certification, "this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). Accordingly, in analyzing predominance and superiority, the Court must scrutinize the evidence plaintiffs propose to use in proving their claims without unnecessarily reaching the merits of the underlying claims.

### A. Predominance

■ In making its predominance determination the Court must first identify the substantive law that will control the outcome of the litigation. *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir.1978).[9] The Court must then examine the manner in which plaintiffs propose to prove their antitrust claim to determine whether common issues of law or fact will predominate. In other words, the Court must determine if the evidence plaintiffs propose to employ will pertain only to individual plaintiffs and their claims or be common to the class as whole. *Id.*

23(b)(3) mandates that common issues predominate over individual issues. Plaintiffs must show that "issues ... subject to generalized proof and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982). Because of the overlap between the commonality requirement of Rule 23(a)(2) and the predominance requirement of

Rule 23(b)(3), courts often deal with the two issues simultaneously. *See* 3 *Newberg* § 18.27 at 497. Thus, the Court will consider the question of commonality in its discussion of predominance under Rule 23(b)(3).

**9.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before September 30, 1981.

The substantive law underlying plaintiffs' civil action for alleged antitrust violations is § 4 of the Clayton Act. To recover treble damages under this section, plaintiffs must prove "(1) that defendants violated the antitrust laws; (2) that the alleged violations caused plaintiffs to suffer some injury to their 'business or property'; and (3) that the extent of this injury can be quantified with requisite precision." *In re Industrial Gas Antitrust Litigation,* 100 F.R.D. 280, 288 (N.D.Ill.1983). Plaintiffs' burden is to establish that common or "generalized proof" will predominate at trial with respect to these three essential elements of their antitrust claim. *Terrell v. Household Goods Carriers Bureau,* 494 F.2d 16, 20 (5th Cir.), *cert. dismd.,* 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *Blue Bird,* 573 F.2d at 317.

Defendants insist that it will be impossible for plaintiffs to present common proof concerning the existence of the alleged nationwide conspiracy, plaintiffs' alleged injury, and the amount of the resulting damages. Accordingly, defendants argue that individual questions will necessarily predominate in the litigation.

### (1) Antitrust Violation

#### a. The Air Transportation Industry

The Court must determine whether plaintiffs have made a threshold showing that the proof they intend to offer at trial of the alleged conspiracy not to compete will be sufficiently generalized in nature and common to the class to warrant certification of the class. *See In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 249 (S.D.Tex.1978). Defendants argue that plaintiffs have failed to show how the existence of the alleged nationwide conspiracy can be shown by generalized proof. Defendants insist that differing competitive conditions and varying pricing structures at each hub and between individual city pairs mean that even if plaintiffs had some evidence of a conspiracy to fix ticket prices on one route, such evidence would not amount to common proof of a nationwide conspiracy. Defendants present an exceedingly complex industry that goes through a mind-boggling number of fare changes each day. Therefore, defendants argue, there is no manner of proof that would indicate the same antitrust violations in all city pairs nationwide.

Defendants rely on *Blue Bird,* 573 F.2d 308, to argue that varying geographical conditions and other market characteristics render plaintiffs' allegation of a nationwide conspiracy unbelievable and unprovable. In *Blue Bird,* the State of Alabama, its superintendent of education, and a county board of education brought an antitrust action against several manufacturers and distributors of school bus bodies for, among other things, conspiracy to fix prices. Plaintiffs sought to represent a statewide class of government entities and a nationwide class of similar governmental units. Defendants argued that because school buses were unique products made to customer specifications and sold through various pricing procedures, plaintiffs could not present common proof of a nationwide conspiracy. The court limited discovery to only those matters concerning the issue of venue. The court then certified a national class, as well as a statewide class, contingent on the court's ability to bifurcate the trial of the matter on the issues of liability and damages. On review, the former Fifth Circuit affirmed as to a statewide class but reversed the trial court's certification of a national class and remanded the case to the trial judge for further proceedings.

While *Blue Bird* has a significant impact on the present motion for class certification, its application produces a result different from that advanced so vigorously by defendants.[10] The *Blue Bird* court found that the only evidence on the record, a

---

10. While the case does not support defendants' position in the manner they contend, *Blue Bird* is important for its instructiveness on several points relevant to class certification: (1) the court must examine and understand the relevant industry in making a Rule 23 determination; (2) the impact element of the antitrust cause of action is the key to class determination; (3) plaintiffs must show not only that there are predominating questions, but that the questions are susceptible to common proof; and (4) the unique facts of each case will determine the outcome on class certification. *See Corrugated Container,* 80 F.R.D. at 250.

deposition of one of the Alabama distributors, did not make it clear that plaintiffs could proceed with generalized proof as to the national class. The court did not conclude, as defendants insist, that the industry was fragmented and heterogeneous; it merely found that plaintiffs had failed to show what type of proof was available on their claims.

> [T]his particular litigation might not fit into the category of a "classic" antitrust price-fixing conspiracy where all legal and factual issues relating to the conspiracy are uniformly related to all those allegedly harmed. Rather, in this case neither the products involved nor the purchasers appear to be standardized. The plaintiffs' class includes different sizes of governmental buyers, operating under different conditions throughout the United States, and the products involved, while commonly known as school bus bodies, apparently differ in many respects and have been marketed under various arrangements at different times. Because of these factors, the defendants contend that a common scheme to rotate bids, fix prices, etc., cannot be demonstrated as to all defendants. While *we do not necessarily agree with this assessment*, it does not appear from the *limited record* before us that the plaintiffs [sic] plan to proceed state by state and prove by varying evidence fifty different price-fixing conspiracies. If this is indeed the plaintiffs' plan, then the national class should not have been certified since there *would be no evidence* linking the different conspiracies to each other in order to establish the one "common" conspiracy.

573 F.2d at 322–23 (emphasis added) (footnotes omitted). The Fifth Circuit was unable to determine the exact nature of the industry and the existence of a common conspiracy because of plaintiffs' failure (or inability because of the limits placed on discovery) to present adequate evidence.

This is not a case, as is *Blue Bird*, devoid of evidence concerning the structure of the market and the variations in pricing alternatives. Plaintiffs have presented the testimony of their chief economic expert, Dr. Beyer, in support of class certification. Dr. Beyer addressed whether the alleged conspiracy would have an impact on all class members and whether there are any viable formulaic approaches by which to calculate the damages suffered by each member of the class. Dr. Beyer's extensive study and analysis is helpful to the Court in analyzing not only impact and damages (*see infra* at pp. 689–692), but also for his conclusions concerning the nature of the airline industry. Based on Dr. Beyer's background, experience, the information and documents he has reviewed in coming to his conclusions and his responses on cross-examination, the Court finds that he is a convincing and credible expert witness. Thus, unlike the court in *Blue Bird*, this Court is able to assess the nature of the industry at issue by reviewing the highly qualified testimony and evidence submitted in this action.

After analysis of considerable information concerning air transportation and fares, Dr. Beyer testified concerning the nature of airline transportation pricing. He opined that there is clearly a structure in airline pricing, notwithstanding the appearance of and changes in thousands of fares, rules, and combinations. Dr. Beyer testified that for any particular coach, first-class or discount fare, the individual fares of the defendants serving the city pair are usually identical.[11] *See* Plaintiff's Exhibits A–1 through A–24 of Dr. Beyer's Affidavit in Support of Class Certification. When differences in the defendants' fares for a particular fare or code did occur, the devia-

---

11. In addition, each airline apparently has a limited number of fares ranging from six to thirty-seven for a city pair. For purposes of reporting, ATPC groups all fare basis codes into a much smaller group of fare-type codes which are used within the system to bring like-fare codes into a broader category. Plaintiffs' Exhibit No. 25 in Support of Class Certification. An exhibit to the deposition of an ATPC representative contains a list of only 43 fare-type codes which are communicated to travel agents by ATPC, many of which are for travel that is not within the class as defined by plaintiffs. Plaintiffs' Exhibit 26 in Support of Class Certification. *See also* Plaintiffs' Exhibit 8 in Support of Class Certification at 2.

tions were only a few dollars in most instances. Dr. Beyer likewise found that the fares within those city pairs for each type of fare as a percentage of the coach fare were also virtually identical across the defendant airlines included in that sample.[12] His analysis presents a much more ordered pattern of pricing than that alleged by defendants. The Court finds that Dr. Beyer presented convincing testimony that the facts concerning fares and fare categories, as a percentage of the full coach fare, or as a percentage of any of the fare categories existing at one time, reveal a structure in airline pricing.

Even if there is structure in airline pricing, defendants argue that the "product" sold is not fungible and, therefore, plaintiffs can show no conspiracy to fix prices on the many different products offered by defendants. The Court finds defendants' continued insistence that the product at issue here is not "fungible" or "homogeneous" somewhat disingenuous and overly simplistic. While the actual ticket from city A to city B is not necessarily interchangeable with a ticket from city C to city D, the service being offered by each defendant, which amounts to the product, is essentially the same.

*Webster's Third International Dictionary* defines homogeneous as "of similar kind or nature: comparable, equivalent." All airline service is homogeneous in that it performs substantially the same function, in substantially the same manner, and for the same purpose. Defendants do not dispute that, from any given origin to any given destination, the service offered by one defendant is not significantly different from that of another serving the same route. In fact, defendants can and do allocate and reallocate air transportation resources from one city pair to another to maximize the return on those resources.

Thus, any defendant can provide comparable service from Atlanta to Omaha in terms of aircraft, crews, etc. *See* Remarks of Secretary of Transportation, Samuel F. Skinner, *The National Press Club* (Jan. 23, 1991) at 3, Appendix 5 to Defendants' Opposition to Plaintiffs' Amended Consolidated Motion for Class Certification. *See also In re Wirebound Boxes Antitrust Litigation,* 1989–2 Trade Cas. (CCH) ¶ 68,818 (D.Minn.1989). As Dr. Beyer concluded after his extensive study of the airline industry:

> Air passenger service is a fungible product, consisting of the transport of a passenger from an origin to a destination aboard an aircraft. Aircraft and crews can be and are readily switched from one route to another. The variety of fares for service between any origin and destination simply reflects the defendant airlines' effort to take advantage of the varying price sensitivities of passengers for the same fungible service.

Statement of John C. Beyer dated May 29, 1991 ¶ 30. The existence of thousands of city pairs or of fare diversity does not change the fact that those fares are attached to the same fungible coach or first-class seat.

The Court agrees with Dr. Beyer's analysis of the industry. This is not a case like *Blue Bird* where the product is made to each owner's particular specifications and the pricing depends on governmental concerns that vary from state to state.[13] The Court finds that all defendants offer equivalent products and that there is an order in the many pricing alternatives offered by defendants. Accordingly, for the purpose of class certification, the Court finds air passenger service a standardized product consisting of the transport of a passenger

---

**12.** Dr. Beyer made his observations for three separate days in 1989 and for the same three days in 1990. The city pairs of the sample included at least one hub city of each defendant airline with the exclusion of those defendants as to whom this action has been stayed because of Chapter 11 filings.

**13.** The purchasing practices of the customers in *Blue Bird* varied greatly because all the purchasers were state or local entities. Thus, the purchasing procedures were often governed by state statutes, regulations, rules, or local customs and habits. In some instances, the purchasers solicited bids and, in others, the prices were negotiated. *See Blue Bird,* 573 F.2d at 312–14.

from an origin to a destination aboard an aircraft.

### b. *Common Proof of Conspiracy*

Having found that the nature of the industry does not automatically preclude plaintiffs from proving a nationwide conspiracy, the Court must now examine the proof plaintiffs propose to submit to determine if it is the type necessary to establish a common conspiracy by all defendants at all hubs. Plaintiffs allege a horizontal, price-fixing conspiracy among defendants that manifested itself in two ways. First, plaintiffs allege an agreement or understanding among defendants not to engage in price competition with any defendant airline on routes to or from that defendant's hub airport. Second, plaintiffs allege that defendants have abused the computerized fare information system provided by defendant ATPC using it to discuss and agree upon fare levels.

Defendants contend that plaintiffs' proof of the alleged conspiracy amounts to mere evidence of localized carrier skirmishes at particular hubs resulting in a 50-state theory of conspiracy similar to that in *Blue Bird.* Once again, defendants' reliance on *Blue Bird* is unwarranted. The former Fifth Circuit found that the district court erred in certifying a nationwide class because it neglected to examine the manner in which the plaintiffs proposed to prove the antitrust violation. Rather than finding that there was no antitrust violation because of the fragmented character of the market, the court determined that it was

> presently unable to make a determination as to whether the conspiracy issue is a question common to the class. It would be unfair for us to make this determination based upon the present state of the record since the plaintiffs have been placed at a severe disadvan-

tage by the district court's decision to prohibit discovery.

*Blue Bird,* 573 F.2d at 323. The court then remanded the action for further discovery and proceedings on any resulting evidence relevant to class certification.

In contrast to the plaintiffs in *Blue Bird,* plaintiffs in the instant action have presented a considerable amount of evidence concerning the alleged antitrust violation.[14] Plaintiffs submitted various documents under seal at the evidentiary hearing, largely produced by defendants, in support of defendants' alleged aversion to price competition and desire to avoid price competition at each others' hubs. Plaintiffs also submitted under seal several internal documents of defendants referring to responses by the airline defendants to what are described as "industry proposals" concerning fares. *See* Plaintiffs' Exhibits 1–8 in Support of Class Certification.

In addition, plaintiffs offered evidence under seal at the evidentiary hearing in support of their contention that all defendants belong to and make use of the services and facilities of ATPC in an essentially common way. *See* Plaintiffs' Exhibits 9–25 in Support of Class Certification. The evidence supports plaintiffs' allegation, common to the class, that the ATPC computer system has provided all defendants with the ability to monitor what every other defendant was and is doing on a virtually moment-by-moment basis.

Resolution of whether the alleged conspiracy presents common questions capable of common proof depends upon an analysis of defendants' challenged behavior: what defendants said or did. *In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143, 153 (E.D.Pa.1979); *Corrugated Container,* 80 F.R.D. at 250. Plaintiffs have presented ample evidence of the actions of defendants concerning fares and hub activities.[15]

---

**14.** Much of plaintiffs' evidence in support of the conspiracy allegation was submitted at the evidentiary hearing under seal, as prescribed by Pretrial Order No. 2, dated December 21, 1990. Accordingly, rather than make specific reference to items under seal, the Court will summarize generally the content of the evidence submitted by plaintiffs.

**15.** In addition, the finding by Dr. Beyer in discussing common impact of above-competitive fares charged by defendants for their class traffic may be a circumstance considered by the jury on the conspiracy issue. Dr. Beyer also found that, with few exceptions, passage is offered out of each hub at identical prices. While pricing alone will not support a conspiracy charge, it is elementary that an unlawful con-

There is no indication that plaintiffs plan to proceed hub by hub in an effort to present evidence of *many* different conspiracies. Instead, the evidence concerning conspiracy presented by plaintiffs reveals a "common nucleus of operative facts" concerning the alleged antitrust violation. *See Eisen II,* 391 F.2d at 566.

For the purposes of class certification, the Court finds that evidence such as the testimony of the representatives of ATPC and the airlines and documents kept in the normal course of defendants' business is the type of generalized proof necessary to prove antitrust violations. While the Court does not find that the documents submitted by plaintiffs definitively prove the existence of a conspiracy, it does find that issues of fact and law relating to proof of defendants' conspiracy are common to all members of the class and predominate over individual issues.

### (2) *Fact of Injury*

■ Fact of injury refers to the Clayton Act's requirement that each plaintiff prove that she was injured in her business or property by a violation of the antitrust laws. 15 U.S.C. § 15(a). Proof of "impact" is not only essential to demonstrating defendants' liability under the antitrust laws, it is also the key element in determining whether common issues will predominate. The court in *Blue Bird* stressed that impact is a question unique to each particular plaintiff and one that must be proven with a fair degree of certainty. *Blue Bird,* 573 F.2d at 317.

Defendants argue that because of the nonstandardized nature of the airline industry and the variety of competitive factors that may affect a specific sale, proof of injury must be established on a sale-by-sale basis. Defendants insist that plaintiffs cannot establish impact because millions of passengers flew on hub fares that (1) remained unchanged or actually decreased; (2) behaved the same as comparable non-hub fares; or (3) were negotiated privately,

outside ATPC, in the form of non-published discounts. Further, defendants allege that there were no across-the-board fare increases during the alleged conspiracy period, that most increases affected only a relatively small number of fares, and that those that did change were broadly dispersed in no discernible pattern. Defendants insist that because of these factors the Court will be forced to conduct individualized inquiries to determine whether a particular putative class member suffered any injury.

Plaintiffs counter that, as a consequence of defendants' agreement not to compete on the basis of price at their hubs, overall prices at those hubs were elevated, resulting in injury to each plaintiff. Under the conspiracy, plaintiffs contend, all fares were maintained at a level inflated above what would have existed in a competitive environment. Plaintiffs allege that defendants' actions thus resulted in an artificial "base" price which became the "benchmark" from which fares were negotiated or discounted. *See Hedges Enterprises, Inc. v. Continental Group, Inc.,* 81 F.R.D. 461, 475 (E.D.Pa.1979).

In support of their theory of common impact, plaintiffs once again offered Dr. John Beyer as an expert witness. Dr. Beyer concluded that:

(1) The defendant airlines' fares and fare or pricing structures (namely, the relationship between the fares from the highest to the lowest) have been the same or very similar at each of the hubs named in the *Second Amended Consolidated Class Action Complaint,* and in each of the origin-destination pairs, or city pairs, at each hub.

(2) This identity or close similarity of the defendants' fares and fare structures means that the alleged conspiracy of the defendants not to compete on the basis of price for the passenger traffic at each other's hubs would have impacted every member of the class.

---

spiracy may be and often is formed in the absence of an express agreement by the competitors. *See Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537,

540–42, 74 S.Ct. 257, 259–60, 98 L.Ed. 273 (1954); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3rd Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

(3) The empirical analysis shows that the yields (passenger revenue per revenue passenger mile) of each defendant airline on its class traffic at each of its hubs have been above those for its own non-class traffic, and above the yields for the corresponding traffic of competitive non-defendant airlines. The statistical regression analysis, performed by him, which takes into account non-conspiratorial variables that influence yields, also confirms the impact of the conspiracy on the class.

(4) Several formulaic methodologies exist by which damages can be calculated for all class members. Two of the approaches follow logically from the direct comparisons of yields. The first approach involves comparing the yields on each defendant's class traffic to the yield on its non-class traffic to compute a percentage overcharge on the class traffic of each defendant airline. The second approach compares the yields on the defendants' class traffic to the yields on the comparable traffic of non-defendant airlines to compute percentage overcharges on the class traffic. A third approach to computing overcharges on the defendants' class traffic uses a competitive benchmark consisting of the defendant airlines' yields in an earlier more competitive period.

Dr. Beyer further opined that, assuming the existence of the conspiracy alleged by plaintiffs, there would have been common impact on all class members, that is, all class members would have paid more for their airline transportation than they would have paid absent the conspiracy. This conclusion is based on a comparison of the yields for each defendant's class hub traffic to the yields of non-defendant airlines for their "class" traffic, and to defendants' own yields for their non-class traffic, and upon the common fare structure. Dr. Bey-

er has concluded that yields for defendants' own class traffic (to or from a defendant's hub) are significantly higher than the class traffic yields of the non-defendant airlines and higher than defendants' own non-class traffic yields. In Dr. Beyer's opinion, this demonstrates common impact.

Dr. Beyer asserts that the analysis and filings of the defendants and their experts are flawed in that they misconstrue plaintiffs' allegations to mean that plaintiffs assert a nationwide conspiracy to increase uniformly by an absolute dollar amount all fares on air transportation over a three-year period to all class purchasers regardless of when or where they flew. Dr. Beyer testified that defendants' arguments focusing on the large variety and diversity among fares, origins and destinations, lengths of flights, and mix of passengers are largely irrelevant in that the conspiracy alleged by plaintiffs does not predict that all defendants' fares would have increased; rather, plaintiffs contend only that, under the conspiracy, every fare was higher than it otherwise would have been. Dr. Beyer asserts that a purchaser paying a decreased fare was nonetheless affected if the fare decline would have been greater in the absence of the conspiracy.

Defendants counter that Dr. Beyer's approach is defective because it is possible that the differences in yields are the result of passenger and fare mix rather than the impact of the conspiracy. Given that defendants have challenged Dr. Beyer's methodology, it is incumbent upon defendants to substantiate that criticism. *Superior Beverage Co. v. Owens–Illinois*, N.D.Ill., No. 83 C 512, Pretrial Order 87–3 at 35–36, n. 9 (December 18, 1987). However, defendants have not come forward with any empirical evidence to demonstrate that their criticism of yield analysis is well-founded.[16]

16. Dr. Beyer is the only witness who has provided any empirical evidence to address defendants' contention that differences in defendants' class and non-class traffic yields may be the result of mix rather than the alleged conspiracy. *See* Transcript of June 5, 1991, Evidentiary Hearing at 52, 84; Exhibits F–1 and F–2, Direct Statement of John C. Beyer dated May, 29, 1991.

Although defendants proffered Dr. Dorman's testimony, and particularly Exhibit 5 to Dr. Dorman's Statement of Direct Testimony, as contrary empirical evidence, it is not. Dr. Dorman's Exhibit 5 is based on survey data collected by defendant American Airlines. Although Dr. Dorman knew the number of respondents, he did not know the number of passengers on

In any event, Dr. Beyer recognized the existence of possible regional and competitive forces that may affect the yields in some instances, as well as variances in the fare and passenger mix. At the evidentiary hearing, the Court was impressed by Dr. Beyer's forthrightness in acknowledging these differences and the expertise with which he accounted for their effect on his analysis. In addition, after reviewing defendants' focus on thousands of fares and fare codes, Dr. Beyer concluded that there was considerable order within the fare chaos described by defendants and their experts. In fact, Dr. Beyer found a structure to defendants' pricing and definite relationships among the fares. *See supra* pp. 686–687. Dr. Beyer further concluded that, given the relationships among fares and the identity or great similarity of fare prices among defendant airlines, a conspiracy among them to charge higher levels of fares than otherwise would have existed would have an impact on all class purchasers. To verify his conclusions further and to measure the common impact on the class, Dr. Beyer undertook various additional empirical analyses.

Defendants claim that Dr. Beyer's use of yield analysis to determine impact amounts to a form of averaging that is actually a method of "fluid recovery." The concept of "fluid recovery" refers to the case where a court allows gross damages to all purchasers without requiring proof of actual injury; that is, where unsubstantiated claims of class members are treated the same as substantiated claims. In short, plaintiffs are relieved of their burden of proving impact and individual damage to each class member. *See, e.g. Eisen III*, 479 F.2d 1005, 1018 (2d Cir.1973); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305–06 (9th Cir.1990).

The Court finds defendants' fluid recovery concerns are not implicated by Dr. Beyer's use of yields. As Dr. Beyer testified on cross-examination, he took precautions to *avoid* an inappropriate masking of averages that should not have been brought together. As Dr. Beyer explains, his yield analysis did not include class traffic of a defendant originating or terminating at another defendant's hub for this reason. Transcript of June 5, 1991, Evidentiary Hearing at 80, 85. Further, Dr. Beyer testified that his conclusion of class-wide impact was in the first instance based on an analysis of fares, and that his yield analysis was to determine if the conclusion reached on the basis of fares could also be shown empirically. *Id.* at 85–86. Dr. Beyer, therefore, concluded with confidence that the fact of impact is common to the entire class. *Id.* at 86.

The Court finds that Dr. Beyer's testimony was not an attempt to relieve the class of its burden of showing common injury and impact. The fact that the methodologies contain some form of averaging does not automatically render them methods of fluid recovery. On the contrary, Dr. Beyer's economic analysis evidences common impact and permits, with reasonable certainty, formulaic calculation of damages. *See Blue Bird*, 573 F.2d at 327.[17] Plain-

---

the flights on which the survey forms were distributed and therefore the percentage of surveys returned. Transcript at 143. More important, Exhibit 5 does not compare American's class traffic with its non-class traffic. The two categories used were passengers destined for a hub (part of American's class traffic) and passengers connecting at a hub to another location. Transcript at 145. The latter category, however, is *not* limited to non-class traffic, but includes a mix of class and non-class traffic, depending on the passenger's ultimate destination. Transcript at 147–49. The Court notes that in their Supplemental Proposed Findings, defendants make no reference to Dr. Dorman or to his Exhibit 5.

Defendants also offered the testimony of Dr. Franklin Fisher. However, Dr. Fisher did not present any empirical evidence to counter that of Dr. Beyer. He merely attacked the methodology employed by Dr. Beyer and suggested other explanations of the conclusions of plaintiffs' expert. The Court, having found Dr. Beyer's testimony highly credible and convincing, is not convinced by the testimony of defendants' experts who do not present any concrete evidence to refute Dr. Beyer's methodologies.

**17.** Once again, defendants' heavy reliance on *Blue Bird* is misplaced. The Fifth Circuit's finding that plaintiffs had failed to show proof of impact was based on the lack of evidence presented, not on the inadequacies of the *type* of proof plaintiffs proposed.

We are not attempting, however, to hold as a matter of law that the impact requirement in the case before us defeats any possibility of

tiffs have not relied solely upon an inference of injury from their proof of conspiracy to support a claim of class-wide proof of injury. Instead, plaintiffs have presented a well-qualified economic expert who, after review of the industry, has presented valid statistical methodologies for proving that each class member was, in fact, injured.

It is not the function of the Court at this time to determine whether Dr. Beyer is correct. The weight to be given his testimony and its effect is for the fact finder in assessing the merits of plaintiffs' claims at a later date. *See In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829 (3d Cir.1990). The Court finds that Dr. Beyer's use of yield analysis to demonstrate common proof of impact is of sufficient substance that it could be submitted to the jury for its consideration. Accordingly, the Court finds Dr. Beyer's testimony "logically probative of a loss attributable" to the alleged conspiracy. *Bogosian*, 561 F.2d at 454. Plaintiffs have adequately demonstrated their ability to show impact as to each individual by the use of generalized proof. Accordingly, the Court finds that common issues predominate over individual questions concerning impact.

### (3) *Damages*

▆▆▆▆ In addition to showing classwide injury as a result of the alleged conspiracy, plaintiffs must show that computation of damages is susceptible to common proof. The Eleventh Circuit has noted that "[o]nce an antitrust violation and its causal relation to plaintiff's injury have been established, the burden of proving the amount of damages is much less severe." *Graphic Products Distributors, Inc. v. Itek Corp.*, 717 F.2d 1560, 1579 (11th Cir.1983). A plaintiff in an antitrust matter need only introduce evidence sufficient for a jury to estimate the amount of damages. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–65, 66

S.Ct. 574, 579–80, 90 L.Ed. 652 (1946). The absence of a formulaic method by which to calculate damages would not be sufficient reason to deny class certification. *Fine Paper*, 82 F.R.D. at 154; *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 734–35 (N.D.Ill, 1977); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 37–38 (S.D.N.Y.1977). Once again, the Court must examine the testimony of plaintiffs' expert in reviewing the issue of damages.

Dr. Beyer also used his yield analysis to identify at least three formulaic approaches to the computation of damages for each class member. Two of those approaches involve the use of the yield analysis and benchmarks consisting of non-defendant airlines' "class" traffic yields or defendants' own non-class traffic yields. The third formulaic approach, also based on Dr. Beyer's yield analysis, uses as a benchmark yields for a period prior to the existence of the conspiracy. In Dr. Beyer's opinion, the three formulaic approaches to calculation of damages would permit the calculation of a minimum overcharge applicable to all members of the class. With the use of those formulaic approaches, according to Dr. Beyer, it would be possible to calculate such minimum overcharges on a calendar quarter-by-quarter basis for each defendant and for each hub.

In addition to the earlier challenges to Dr. Beyer's methodologies, defendants argue that plaintiffs' expert has merely presented unexplained assurances that he can compute damages on a classwide basis. Defendants refer to Dr. Beyer's deposition in which he indicates that he had not "explicitly developed a damage methodology that can be applied at this very moment across the class period." Deposition of Dr. John Beyer dated May 30, 1991, at 149.

Defendants have mischaracterized Dr. Beyer's testimony. In addition to the

---

class certification. It may be that the defendants' description of the school bus industry is inaccurate or that the plaintiffs can figure out some way to show the impact as to each member of the plaintiffs' class without having to resort to lengthy individualized examinations.

573 F.2d at 328. The Court finds that plaintiffs in the present action have done much more than merely "figure out some way to show common impact." They have presented the Court with convincing, credible evidence of the type never made available in *Blue Bird*.

statement defendants cite, Dr. Beyer's also testified that:

> Q. As you sit here, Dr. Beyer, at this moment, you have not explicitly developed a damage methodology that can be applied at this very moment across the class period. Have you?
>
> A. I have identified and indeed have gone several steps beyond simply identifying prospective methodologies for the measurement of damages which I am confident can be applied. They have obviously not actually been implemented because we are not at that stage in the litigation where that task can and should be done.

Transcript of June 5, 1991, Evidentiary Hearing at 117. Dr. Beyer further testified that his deposition testimony cited by defendants was consistent with his answer at the evidentiary hearing. It is not necessary that plaintiffs show that Dr. Beyer's methods will work with certainty at this time. Rather, plaintiffs' burden is to present the Court with a likely method for determining class damages.

The Court finds Dr. Beyer's proposed methodologies consistent with precedent. *In re Wirebound Boxes Antitrust Litigation*, 1989–2 Trade Cas. (CCH) ¶ 68, 818 at 62, 284 (D.Minn.1989); *In re Corrugated Container Antitrust Litigation*, 556 F.Supp. 1117, 1154 (S.D.Tex.1982); *In re Plywood Antitrust Litigation*, 1979–1 Trade Cas. (CCH) ¶ 62, 459 (E.D.La.1979), *aff'd*, 655 F.2d 627 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983); *Nichols*, 675 F.2d at 678. Plaintiffs have presented evidence sufficient for the jury to render an award of damages. The Court is convinced by Dr. Beyer's testimony at deposition and at the evidentiary hearing that an adequate method exists for calculation of individual damages.[18]

### (4) *Conclusion On Predominance*

For the reasons stated above, the Court finds that plaintiffs have met their burden with respect to demonstrating the existence of common issues of law and fact as required by Rule 23(a)(2) and have shown that questions concerning the existence of the conspiracy, the impact of the conspiracy, and the formulaic measure of damages predominate over any issues that are not common to the class. This is not a determination by the Court on the merits of plaintiffs' claims as argued by defendants. Instead, the Court has concluded that plaintiffs have presented proper proof for the finder of fact to determine the existence of an antitrust injury resulting from the alleged conspiracy.

### B. Superiority

■ In addition to finding that common questions predominate over individual inquiries, in certifying a class under Rule 23(b)(3), the Court must find that the class action vehicle is superior to other available methods for adjudication. In making its determination the Court must find that difficulties in management will not render this action improper for certification.

Defendants insist that this case will be unmanageable as a class action because the proposed class will number in the millions and will involve over 400 million transactions, requiring "mini-trials" for millions of purchasers. The Court cannot deny certification, however, merely because the number of plaintiffs makes the proceeding complex or difficult. *See* 3 *Newberg* § 18.37. The Court admits that it has been most concerned about the manageability of this action; however, "difficulties in management are of significance only if they make the class action a *less* 'fair and efficient' method of adjudication than other available techniques." *In re Antibiotic Antitrust Actions*, 333 F.Supp. 278, 282 (S.D.N.Y.1971) (emphasis in original).

The Court finds a class action the *only* fair method of adjudication for plaintiffs. The individual claims of many class mem-

---

**18.** This case is fully distinguishable from *Wilcox Dev. Co. v. First Interstate Bank of Oregon*, 97 F.R.D. 440 (D.C.Or.1983), cited by defendants, in that Dr. Beyer has proposed not one, but three "mathematical formula[e] for computing damages," including use of a conspiracy impact percentage after appropriate adjustment. Dr. Beyer has provided far more than "the rough outlines of how ... [he] would approach the problem." *Industrial Gas*, 100 F.R.D. at 300.

bers are so small that the cost of individual litigation would be far greater than the value of those claims. *See Du Pont Glore Forgan, Inc. v. American Tel. & Tel. Co.,* 69 F.R.D. 481, 487 (S.D.N.Y.1975). Thus, if this case is not certified as a class action, a majority of class members would likely abandon their claims even if it can be proven that defendants have conspired to fix prices of domestic air transportation. Justice Douglas, concurring in *Eisen,* recognized the necessity of a class action in a case such as this:

> [A] class action serves not only the convenience of the parties but also prompt, efficient judicial administration.... [plaintiffs may be] consumers whose claims may seem *de minimis* but who alone have no practical recourse for either remuneration or injunctive relief.... The class action is one of the few legal remedies the small claimant has against those who command the status quo.

417 U.S. at 185, 94 S.Ct. at 2156.[19]

Either the case proceeds as a class action or it is over. While the action involves an enormous class of claimants, the Court will not preclude plaintiffs from pursuing their remedies under the civil antitrust laws unless the only conclusion the Court is able to reach is that the action is unmanageable.

At the Court's request, plaintiffs submitted a preliminary plan for the administration of class member claims. Included in the preliminary plan is plaintiffs' estimate that the class will number close to 12.5 million purchasers.[20] Plaintiffs' preliminary plan, while lacking in detail, evidences a keen understanding of the steps necessary to process claims. In addition, manageability will be enhanced by the considerable experience of counsel and the inclusion of accounting firms specializing in class litigation. Computers can index and control vast quantities of textual data and scanners are available to enter data automatically into the computer. These are resources that have only recently become available and that courts must be willing to employ to resolve the dilemma of the massive antitrust case.[21]

At this juncture, the Court finds that the size of the class and number of damage claims do not present insurmountable manageability problems. While the number of possible claimants is staggering, defendants should not be permitted to avoid responsibility for the magnitude of their alleged conspiracy. Plaintiffs have come forward with sufficient evidence of formulaic approaches to the measure of damages. The calculation of individual damages for class members, therefore, does not make this case unmanageable as a class action.

**19.** Justice Douglas went on to cite in footnote Judge Weinstein's eloquent statement concerning the responsibility of courts in class action litigation.

> The matter touches on the issue of the credibility of our judicial system. Either we are committed to make reasonable efforts to provide a forum for adjudication of disputes involving our citizens—including those deprived of human rights, consumers who overpay for products because of antitrust violations and investors who are victimized by insider trading or misleading information—or we are not. There are those who will not ignore the irony of courts ready to imprison a man who steals some goods in interstate commerce while unwilling to grant a civil remedy against the corporation which has benefited, to the extent of many millions of dollars, from the collusive, illegal pricing of its goods.

*Id.* at n. 8.

**20.** In response to plaintiffs' preliminary plan, defendants contend that the number of class

members will likely exceed fifty million. Defendants argue that plaintiffs' estimate of class size is "several-fold too low" and based on misleading methodology. *See* Defendants' Response to Plaintiffs' Preliminary Plan for Administration of Claims and Appendix at 4. The Court does not feel that either side has found a certain method for approximating class size. While defendants attack plaintiffs' omission from the class of business travelers who do not charge their travel to corporate accounts, they do not present any other basis for the Court to question the credibility of plaintiffs' estimate. In any event, the Court's decision on manageability is not a determination based solely on numbers. It must decide whether the claims, whatever the number, can be efficiently administered in a fashion that safeguards the rights of all parties.

**21.** The Court will require plaintiffs to show affirmatively that modern technology can be employed without violating defendants' substantive rights.

Defendants' second attack on the superiority of the class action is that the enormous number of class members would make individual notice to each impossible, as the cost would be prohibitive. Defendants contend that many of the class members are not readily identifiable and, therefore, plaintiffs cannot direct individual notice to all class members in violation of Rule 23(c)(2).

In a case certified pursuant to Rule 23(b)(3), notice must be given to the members of the class and an opportunity must be given to them to opt out of the class. Fed.R.Civ.P. 23(c)(2). Rule 23(c)(2) requires the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23 does not mandate individual notice; instead, it requires that "[t]he notice must be such as is reasonably calculated to reach interested parties and apprise them of the pendency of the action." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Where the names and addresses of class members are known, individual notice to each is required. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. at 156, 94 S.Ct. at 2140 (1974). However, in this action, the identity of each class member, defined as a purchaser of domestic airline passenger tickets, is not yet known and at least for the purpose of initial class notice, cannot be known. Defendants acknowledge that their records do not reflect the addresses of all passengers, nor do they list all actual purchasers of airline tickets.[22]

The Manual for Complex Litigation, Second § 30.211 explains:

Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution ... the fact that notice to some class members must be given by publication is not necessarily fatal. In all cases the court should strike an appropriate balance [in determining the type of notice] between protecting class members and making Rule 23 workable.

Plaintiffs assert that the best notice practicable in this case may be publication notice. The class traffic includes 23 hub locations. Publication notice, therefore, could be given in a newspaper of general circulation in each of those 23 locations. In addition, as has been done in many other cases, publication notice could be given in various national publications such as *USA Today*, the national edition of *The Wall Street Journal*, and various magazines and business publications (e.g., *Newsweek, Business Week*, etc.). *See* MCL 2d § 30.211.

Each of the defendant airlines places in the seat pocket of its aircraft a magazine for the passengers. Plaintiffs suggest that notice could also be included in those magazines which would be likely to reach a large segment of the class. Likewise, since many members of the class purchase their airline tickets either through travel agents or at airline ticket offices or counters, it would also be possible to place notices at each of those locations, including individual notices that could be handed to, or torn off from placards by, interested class members.

Plaintiffs contend that it is also possible in a reasonable manner to obtain as a result of the publication notice, a list that would identify at least some class members

---

**22.** In their most recent submission, defendants "have begun to determine what kinds of information are available" concerning the identity of class members. *See* Defendants' Response to Plaintiffs' Preliminary Plan for Administration of Claims and Appendix at 8. It is defendants' position that the identity of some ten million potential class members can be obtained by plaintiffs through reasonable efforts. Defendants continue to maintain, however, that "it is undoubtedly true that it will never be possible to identify, *i.e.*, provide a name and address for,

every member of the class." *Id.* The merits of these preliminary plans for the identification of potential plaintiffs and the determination of whether they amount to "reasonable efforts" under Rule 23 will be taken up at the hearing on class notification. Should the Court find that the identity of potential class members is available through reasonable efforts, plaintiffs will be required to notify individually each of the identified purchasers as well as provide adequate public notice to the unidentified class members.

by name and address. The publication notice could provide an address and/or an "800" telephone number with which class members could communicate in order to identify themselves and obtain additional information concerning the class action.

The Court finds that the notice requirement of Rule 23 does not presently render this action unmanageable. Plaintiffs have offered an abundance of information concerning the possibility of notice. This discussion does not represent the Court's final determination concerning the adequacy of notice; a separate hearing will be held to determine the method and content of class notice.

█ Finally, defendants contend that this action is unmanageable because plaintiffs are unable to identify direct purchasers of airline tickets. Defendants further refined this "passing-on defense" at the evidentiary hearing and in their supplemental findings of fact and conclusions of law to allege that direct purchasers who were reimbursed under preexisting contracts have no standing as class members. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

The Court finds that the passing-on defense is not properly raised at this time as defendants' argument goes directly to the merits of each plaintiff's claim.[23] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157, 94 S.Ct. 2140, 2143, 40 L.Ed.2d 732 (1974); *Butt v. Allegheny Pepsi–Cola Bottling Co.*, 116 F.R.D. 486, 489 (E.D.Va. 1987); *Brown v. Cameron–Brown Co.*, 92 F.R.D. 32, 37 (E.D.Va.1981); *In re Ampicillin Antitrust Litigation*, 55 F.R.D. 269, 277 (D.C.1972). Defendants have submitted no evidence whatsoever for their

assertion that "in the case of reimbursement for airline tickets, there is often a preexisting cost-only, rather than cost-plus contract."[24] Accordingly, the Court finds no manageability problems related to the direct/indirect purchaser status.

In certifying the class, the Court recognizes its right, at a later date, to create subclasses to enhance manageability and to appoint special masters. In addition, the Court will continue to review and monitor the manageability of this action in light of evidentiary developments throughout the course of this litigation.[25] At this juncture, the Court finds that difficulties in management resulting from the large number of potential claims do not make the class action a less fair and efficient method than other available techniques.

### III. *Conclusion*

█ After thorough consideration of the entire record, the Court finds that questions of law and fact common to the class predominate over individual issues. Plaintiffs have met their burden of showing that the antitrust violation, impact, and damages may be proven through generalized proof, and that the class action device is superior to any other method of adjudicating plaintiffs' claims. In addition, the Court finds the action suitable for certification pursuant to Rule 23(b)(2) for final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Accordingly, the Court GRANTS plaintiffs' Amended Consolidated Motion for Class Certification and ORDERS that these consolidated actions shall proceed as a class action on behalf of the class consisting of:

---

**23.** In addition, any objection that defendants may have had concerning the standing of the individually named plaintiffs should have been addressed to the adequacy of representation prerequisite of Rule 23(a). At no time have defendants raised such an argument.

**24.** In their most recent submission, defendants acknowledge "that issues pertaining to reimbursement of airline ticket purchasers and any 'passing-on' defense need not be addressed at

this stage of the litigation, but rather are appropriately postponed to the time, if ever, when individual claims are adjudicated." Defendants' Response to Plaintiffs' Preliminary Plan for Administration of Claims at 19, n. 17.

**25.** To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it.

All persons in the United States, who, during the period January 1, 1988, to the present, purchased domestic airline passenger tickets from one or more of the defendant airlines for air transportation on a single defendant airline to and/or from a defendant's hub (as defined in ¶ 23 of Plaintiffs' Amended Consolidated Complaint), (but excluding defendants, their parents, subsidiaries and affiliates and the directors, officers and employees of defendants, their parents, subsidiaries and affiliates and all governmental entities).

The Court DIRECTS the parties to confer concerning the content, timing, and method of notice to be given the class and to present to the Court within 30 days of the date of this order written statements as to any agreements they have reached with respect to the notice and their respective positions concerning any areas of disagreement.[26] If the parties are unable to agree on the form of notice, each shall submit their own proposed notice. In addition to the copies required by the Local Rules, the statements should be submitted on 5¼ inch floppy disks, formatted for MS-DOS and, if possible, compatible with WordPerfect 5.0 software. The proposed distribution of class notices, what constitutes reasonable efforts necessary to identify class members, the nature of assistance required by defendants in identifying class members, and the allocation of identification expense may be the subject of an evidentiary hearing at the time of the notice hearing if the parties are unable to agree on the issues.

In addition, the Court DIRECTS the parties to submit a joint proposed schedule for a hearing and briefing on the class notice, and a hearing and briefing on the proposed settlements, within 10 days of the date of this order. Finally, the Court DENIES defendants' motion for leave to file a supplemental memorandum filed June 28, 1991.

IT IS SO ORDERED.

26. We have some of the finest antitrust lawyers in the country representing both sides in this action. Up to this date, many of the difficult

## APPENDIX A

### UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

In re:

Domestic Air Transportation
Antitrust Litigation

This Document Relates To:

All Actions

Master File

No. 1:90–cv–2485–MHS &

MDL No. 861

ORDER

Defendants' request for a limited evidentiary hearing on plaintiffs' amended motion for class certification is hereby granted and a hearing has been scheduled for June 5, 1991, at 9:30 a.m. In the interest of efficiency and preventing the class certification inquiry from extending to the merits of the case, the Court will outline briefly the procedure and substance of the hearing. In addition, the Court will make preliminary determinations concerning some of the undisputed Rule 23 requirements and will indicate the outstanding issues for discussion at the hearing.

I. *Discussion*

Rule 23 of the Federal Rules of Civil Procedure details the criteria for maintaining a class action. The proposed class action must first meet the four prerequisites outlined in Rule 23(a). After a determination that an action meets these four initial requirements, a class action may be maintained if it falls into one of the categories listed in Rule 23(b). The party seeking class certification has the burden of showing that all the prerequisites have been satisfied and demonstrating that the action falls within one of the 23(b) categories. 7A Wright & Miller, *Federal Practice and Procedure* § 1759 (1986). *See also Gil-*

issues have been settled among counsel without the intervention of the Court. Hopefully, that cooperation will continue.

*christ v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984).

Defendants have chosen not to outline any specific opposition concerning the preliminary requirements of Rule 23(a). In their opposition to plaintiffs' request for class certification, defendants have limited their arguments to the Court's Rule 23(b) determinations.[1] As indicated below, the numerosity, typicality, and adequate representation requirements are easily met in this action. The outstanding issues, those which will be the focus of the evidentiary hearing, concern the Court's determination regarding Rule 23(b) and its findings as to commonality. Accordingly, the Court will make its determinations concerning some of the preliminary matters necessary for class certification and will leave the Rule 23(b) determinations for the upcoming hearing.

### A. Rule 23(a) Requirements

The four prerequisites of Rule 23(a) are commonly referred to as (1) numerosity; (2) commonality; (3) typicality; (4) and adequate representation. The first requirement, numerosity, is satisfied if the proposed class is so numerous that joinder of all members is impracticable. "Impracticable" does not mean "impossible"; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class. 3 Newberg, *Newberg On Class Actions,* § 18.03 at 455 (1985).

Simply put, plaintiffs propose a class of those people who have purchased domestic airline tickets from one of the defendants for traveling to or from a defendant's hub since January 1, 1988. Defendants do not dispute that the proposed class may number at least in the hundreds of thousands.[2] Joinder of all these purchasers would surely result in severe litigational hardship and inconvenience, and, though not required, would border on the impossible. *Id.* The number of parties involved, the inexpediancy of their joinder, and the inconvenience of trying individual suits would make joinder of all parties impracticable. Accordingly, the Court finds that the action adequately satisfies the numerosity prerequisite for class certification.

"Typicality" refers to the requirement under Rule 23(a)(3) that the claims and defenses of the representative parties must be typical of the claims and defenses of the class. A plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." 3 *Newberg On Class Actions,* § 18.09 at 464. In addition, "the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class." 7A Wright & Miller, *Federal Practice and Procedure* § 1764 (1986); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

In the present action, the named plaintiffs' claims stem from the same legal theo-

---

**1.** Defendants refer throughout their papers to plaintiffs' general inability to satisfy Rule 23 requirements. As the former 5th Circuit noted in *Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (1978), (a case heavily relied upon by defendants), the Court must determine whether a case meets each of the Rule 23(a) prerequisites prior to examining the propriety of the class under one of the subsections of 23(b). 573 F.2d at 315. Defendants principal argument is that plaintiffs are unable to establish the elements of their antitrust claim with "common" or "generalized" evidence. In particular, defendants vigorously dispute the findings of plaintiffs' chief economic expert on the question of class-wide proof of damages and impact. Defendants are correct in noting that determinations under 23(a) and (b) often overlap, however, they have provided no foundation for an argument relating to any of the 23(a) requirements nor have they refuted the plaintiffs' assertions concerning the threshold requirements. The Court's findings today reflect defendants' decision to narrow their focus to the Rule 23(b) requirements rather than considering all of the criteria necessary for class certification.

**2.** It is not necessary that the number of class members be computed with precision at this time; plaintiffs need only approximate the size of the class. *Id.* § 18.02 at 454.

ry as that of the class claims: that defendants conspired to fix prices in violation of the antitrust laws, the prices were thereby fixed, and plaintiffs purchased products (airline tickets) at prices which, as a result of the conspiracy, were higher than they otherwise would have been. While the members of the class purchased many tickets at different prices according to varying conditions, the nature of their claims remains the same. *See* Newberg § 18.10 at 466; *Minnesota v. United States Steel Corp.*, 44 F.R.D. 559 (D.Minn.1968). Accordingly, the Court finds that the claims of the named representative plaintiffs are typical of those of the entire class.

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. The test for adequacy of class representation centers on whether the interests of the class representatives conflict with those of the class, and whether the class representatives would competently represent the interests of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir.1968).

In the instant action, the named plaintiffs share with the entire class an interest in establishing defendants' liability by proof that defendants fixed domestic airline fares. The representative plaintiffs fall within the revised class definition and their claims are identical to the entire class. The Court can find no conflict that would impair class representation. Likewise, the Court is satisfied that the named plaintiffs are adequately represented by competent and experienced counsel who are committed to the vigorous prosecution of this action. Plaintiffs' counsel, many of whom specialize in this type of litigation, are experienced and familiar with antitrust class actions. They are organized in a fashion that will enable efficient prosecution of the action. In addition, defendants have raised no argument concerning the adequacy of class representation. Indeed, the course of the litigation up to this point indicates that counsel for all parties are exceptional in their ability to pursue and defend this action. Accordingly, the Court finds that the interests of the class will be fairly and adequately protected by the representative parties.

While numerosity, typicality, and adequate representation are relatively simple determinations, the Court cannot so easily dispose of the commonality requirement of Rule 23(a)(2). This final prerequisite of Rule 23(a) requires that questions of law or fact common to the entire class be present to maintain a class action. Typically, allegations such as plaintiffs' concerning the existence and scope of an alleged conspiracy satisfy the commonality requirement.[3] However, while it is not necessary that every question of law or fact is common to every class member, commonality will not exist as long as there is a predominance of individual issues. Newberg § 18.08 at 462. Similarly, 23(b)(3) mandates that common issues predominate over individual issues. Defendants argue that neither plaintiffs' nationwide conspiracy theory nor their antitrust injury can be proven through common proof on a class-wide basis, and that, therefore, individual issues will prevail over questions common to the class. While it appears that plaintiffs may have met the minimal showing of some commonality, the overlap between Rule 23(a) and (b) demands that the Court rule on the predominance question and commonality following the limited evidentiary hearing. Accordingly, the Court will reserve its ruling on the issue of commonality.

**B. Rule 23(b) Requirements**

For certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to members of the class predominate over questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy." The crux of defendants' opposition to class certification is that plain-

---

**3.** In fact, price-fixing allegations are often viewed as central or overriding issues establishing a common question. *Id.* § 18.06 at 460.

*See also Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

tiffs have not shown how they will prove on a class-wide basis the existence of a conspiracy, antitrust injury, and damages. "Unless these elements are subject to proof on a class-wide basis, commonality, predominance, and manageability are lacking." Defendants' Memorandum In Support Of Request For A Limited Evidentiary Hearing at 2, footnote 2. Accordingly, the focus of the limited evidentiary hearing will be the appropriateness of class certification under Rule 23(b)(3).[4]

In addition, defendants strenuously contest the methodology (as outlined in the affidavit of expert Dr. John C. Beyer) used by plaintiff to establish that conspiracy, antitrust injury, and damages are susceptible to class-wide proof. "[I]t is on Dr. Beyer's testimony that plaintiffs' motion for class certification must rise or fall." *Id.* at p. 4. Therefore, the hearing will be limited to expert testimony on the following issues:

(1) Whether common issues of law or fact predominate over questions affecting individual members of the class, particularly in the area of impact and damages;

(2) Whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy, focusing primarily on plaintiffs' ability to give adequate notice.

All testimony and argument should focus solely on the issues outlined by the Court.

### C. Procedure

The evidentiary hearing will not be a "mini-trial" on the merits of the class or individual claims. As defendants have indicated, the primary purpose of the hearing is to allow defendants to "challenge Dr. Beyer's methodology, data, and opinions in detail." *Id.* at p. 5. Therefore, the Court will limit each side to the presentation of three expert witnesses. Prior to the hearing, each side must submit the direct evidence of each expert by prepared statement, not to exceed thirty pages. *See* Manual for Complex Litigation 2nd, § 30.13. Each side will be allowed three hours for cross-examination and one hour for redirect. Cross-examination may address the prepared statements and the affidavits previously submitted. There will be no re-cross-examination. The Court will allow opening statements not to exceed thirty minutes and closing statements of one hour each. The guidelines set forth by the Court will allow the prompt and just resolution of the issues remaining on the class certification question.

### II. *Conclusion*

The questions concerning class certification reduce to whether the action properly falls within the scope of Rule 23(b)(3). The limited evidentiary hearing, therefore, will be a focused review of each sides evidence concerning the existence or non-existence of class-wide proof. It will not be an opportunity for inquiry into the merits of this complex action.

Accordingly, the Court DIRECTS the parties to submit as direct evidence by May 29, 1991, adoptive prepared statements of no more than three expert witnesses. Furthermore, the Court DIRECTS the parties to file proposed findings of fact and conclusions of law concerning all issues by June 3, 1991. In addition to the paper filings, all submissions should be submitted to chambers on 5¼ inch floppy disks, formatted for MS–DOS and, if possible, compatible with WordPerfect software.

IT IS SO ORDERED, this 7th day of May, 1991.

/s/ <u>Marvin H. Shoob</u>
Marvin H. Shoob
United States District Judge
Northern District of Georgia

---

**4.** Plaintiffs also move for class certification based on their request for injunctive relief under Rule 23(b)(2). While the Court feels that the treble damages aspect of this action defines the true nature of this action—one for damages—it will reserve ruling on the Rule 23(b)(2) request pending the outcome of the evidentiary hearing.