Charles T. WHITE and Naomi R.
White, his wife, Plaintiffs,

v.

The DELTONA CORPORATION,
Defendant.

No. 74–444–Civ–CF.

United States District Court,
S. D. Florida.

April 9, 1975.

Hugh Sawyer, Naples, Fla., and Alldredge & Gray, Miami, Fla., for plaintiffs.

Peeples, Earl & Blank, Miami, Fla., for defendant.

## ORDER

FULTON, District Judge.

This cause came before the Court for hearing on March 3, 1975, upon plaintiffs' motion for determination of a class action. Having considered the arguments of counsel, plaintiffs' motion and supporting memorandum, defendant's reply memorandum, and having completely reviewed the file, the Court now must determine whether this is a viable class action under Rule 23 of the Federal Rules of Civil Procedure.

The two named plaintiffs filed this action, seeking to represent a class of approximately 745 persons who have entered into land purchase agreements with the defendant corporation. Count one of plaintiffs' second amended complaint sets forth a claim for specific performance of real estate contracts and for compensatory and punitive damages allegedly resulting from the failure of the defendant to provide title insurance, deliver warranty deeds, complete paving of streets, install water mains, and complete bulkheading. Count two of the complaint claims that the advertising plan used by the defendant in promoting its development amounted to a scheme or plan perpetrated by defendant in violation of Rule 10b–5 of the Securities Exchange Act of 1934. Count three claims that the defendant's advertising conduct violated the Interstate Land Sales Full Disclosure Act, Title 15, United States Code, Section 1703(a)(2)(A) and (C).

Defendant's answer admits the existence of the contract with the plaintiff, and admits it has not issued warranty deeds, provided title insurance, completed paving of the streets, installed water mains, or completed bulkheading, but denies all other material allegations of the complaint. The defendant's answer contains counterclaims for interference with a business or contractual relationship and for abuse of process.

Plaintiffs seek to bring this action as a Rule 23(b)(3) class action, and it is therefore necessary that

. . . questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The land involved in this lawsuit consists of two developments, one on Marco Island and one on Marco Shores. The general topography of the two developments is similar, both having some lots which are partially submerged and which contain extensive mangrove growth. The named plaintiffs own no property on Marco Shores. Named plaintiffs were some of the first purchasers of these lots, having entered into a land purchase agreement with the defendant in April of 1965. This lawsuit involves purchases of land made from 1965 through late 1973.

The named plaintiffs claim that the issues are identical with respect to each class member and the plaintiffs. Named plaintiffs claim that the basic issues in suit are these: 1. Whether the defendant breached its contract with each member of the class; 2. Whether the defendant fraudulently failed to disclose to the class members critically pertinent and material information concerning the fact that prior government approval in the form of numerous dredge and fill

permits was needed before the property purchased could ever be developed; and 3. Whether the defendant's course of business conduct with respect to the class constitutes a "device, scheme or artifice to defraud" in violation of Rule 10b–5 of the Securities Exchange Commission and Section 1703 of the Interstate Land Sales Act.

■ In order to determine whether questions of law and fact common to the class do predominate, it is necessary to examine the issues and nature of the proof required at trial. Denver v. American Oil Co., 53 F.R.D. 620 (D. Colo.1971). Such examination reveals many varied individual issues which would have to be individually determined if this action were maintained as a class action.

The transactions in question took place over a period of approximately nine years. During that time, numerous legislative acts were passed which pertained to protection of the environment. An examination of the effective date of each act in relation to each individual land purchase agreement would have to be made in order to determine its applicability to each purchase in question.

Count three of the complaint alleges that the advertising plan employed by the defendant in the promotion of its development violated the Interstate Land Sales Full Disclosure Act. That act, 15 U.S.C.A. § 1701 et seq., went into effect in 1968, more than three years after named plaintiffs entered into their land purchase agreement. Thus, named plaintiffs claims cannot be said to be typical of the claims of the class, as required by Fed.R.Civ.P. 23(a)(3), and it cannot be said that the representative parties will fairly and adequately represent the class, Fed.R.Civ.P. 23(a)(4), since the named plaintiffs lack standing to claim any relief under the Interstate Land Sales Act. If a class action were allowed, an individual determination would of necessity have to be made with respect to each purchase in order to determine whether the Interstate Land Sales Act applied to it.

■ The named plaintiffs assert fraud by the defendant under the Securities Exchange Act of 1934 and the Interstate Land Sales Full Disclosure Act. Even assuming that each sale of real property involved a "security," within the meaning of the 1934 Act, and that the advertising constituted a plan or scheme to defraud within the meaning of Rule 10b–5 and the Interstate Land Sales Full Disclosure Act, and that the Interstate Land Sales Act applies to certain purchases, there would remain a separate issue with respect to each purchaser with regard to the alleged fraud involved. This case involves advertising through different media over an eleven year period beginning in 1963. Some of the alleged misrepresentations were oral, some of them written, and the advertising varied throughout the eleven year period. Individual determination would have to be made in order to ascertain what advertisement reached each purchaser, and the extent to which he relied on it. As the Fifth Circuit has said:

> If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action. See Rule 23, Advisory Committee's Official Note, 39 F.R.D. 98, 107 (1966). Thus, courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action. Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880 (5th Cir. 1973).

■ Another factor bearing on whether the representative party will fairly and adequately represent the interests of the class is whether his interests are antagonistic in any way to the interests of those whom he represents. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The lots on Marco Island and Marco Shores are var-

iously intended for residential and retirement homesites and commercial ventures, and thus the purchasers of lots have an interest in the continued growth and maintenance of these communities. The named plaintiffs claims for compensatory and punitive damages in the amount of many millions of dollars cannot be considered consonant with the continued financial viability of Deltona, and would certainly seem antagonistic to the claims of the purported class.

Also in connection with the fair and adequate representation requirement is the named plaintiffs' claim on behalf of Marco Shores. The named plaintiffs own no land on Marco Shores, and thus lack standing to represent purchasers on Marco Shores.

■ It is clear that each purported class member must meet the $10,000.00 jurisdictional prerequisite, Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and plaintiffs' second amended complaint carefully alleges that each member of the class can satisfy this requirement. It appears, however, from discovery proceedings, that a substantial number of the land contracts, some 893 out of the original estimated class of 1235, were for $10,000 or less. The named plaintiffs argue that the market value of the lots in question has risen, and that in addition, the direct and consequential damages suffered by each class member exceeds the initial purchase price. Nevertheless, an individual determination would have to be made to determine who comprised the class, necessitating a total of over 700 individual determinations. As stated in *Zahn*:

> Thus, the requirement that each class member meet the jurisdictional amount clearly undermines the usefulness of Rule 23(b) (3) class suits, because the problem of defining an appropriate class over which the court has jurisdiction will often prove insuperable.

Indeed, we think this problem is insuperable in the case at bar, for we can find no appropriate class over which we have jurisdiction. A class defined as all lakefront landowners and lessees . . . having $10,000 in controversy would not be feasible. The class would have to be further defined either before or after trial on the liability issue. A determination before trial of the landowners actually encompassed within this class would require the unnamed class members to appear and at least plead, and perhaps prove facts substantiating an amount in controversy. This would eliminate any advantage of a class action over joinder; a class action would therefore not be properly maintainable because class treatment would not be superior . . . as required by Rule 23(b)(3).

Nor could further definition of the class be postponed until after trial on the liability issue. As the notes of the advisory committee indicate, the 1966 revision of Rule 23 was meant to exclude 'one-way intervention' and to lessen problems relating to the res judicata effect of judgments. But if liability were found not to exist in the case at bar, the res judicata effect of the judgment would depend on an evaluation at some future date of whether a given class member had $10,000 in controversy at the time of this action. This is clearly an impossible task. And if liability were found to exist, the question of jurisdiction would be hopelessly intertwined with the determination of damages. Zahn v. International Paper Company, 53 F.R.D. 430, 433-4 (D.Vermont 1971), aff'd 414 U.S. 291, 94 S.Ct. 505.

The *Zahn* case also involved a Rule 23(b)(3) suit by landowners purporting to represent other landowners, and involved some 200 class members. The instant case, with its 745 purported class

**564**

members, would require the Court to make 745 individual determinations as to the amount in controversy, a task which would hardly lend itself to the "efficient adjudication of the controversy," as required by Rule 23(b)(3).

Count One of plaintiffs' complaint which contains a claim for breach of contract for the defendant's alleged failure to issue warranty deeds, provide title insurance, and so forth, likewise raises numerous individual issues. In its answer, the defendant has raised a number of affirmative defenses, including estoppel, accord and satisfaction, waiver, laches, applicable Statutes of Limitations, supervening illegality, and acquiescence. Each of these affirmative defenses would have to be applied to each of the 745 purported class members, and individual determinations made as to whether each claim was barred by one or more of the affirmative defenses. In addition, damages, if any, would have to be proven as to each lot in issue, based on such individualized factors as each lot's use, location and topography. It thus cannot logically be argued that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . " Rule 23(b)(3).

■ Rule 23(b)(3) requires that a class action be " . . . superior to other available methods for the fair and efficient adjudication of the controversy . . . " One of the matters pertinent to this finding is the extent and nature of any litigation already commenced. There is currently one breach of contract action pending in state court.

2. Pursuant to Local Rule 19, subd. A, pars. 3 and 4, all allegations of the second amended complaint and counterclaim pertaining to the maintenance of this action as a class action are hereby stricken and disallowed.