## SILVERS v. COUNTY OF DADE
Case No. 82-16711 (CA 29)
Eleventh Judicial Circuit, Dade County
November 28, 1983

Jeffrey A. Pardo, for plaintiff.

Howard Setlin, for Flagship National Bank.

Alan H. Fein, for City National Bank.

Murray A. Greenberg, First Assistant County Attorney, for defendant.

FREDERICK N. BARAD, Circuit Judge.

This cause is before the Court on the Defendant, Dade County's Motion to Dismiss for Lack of Subject Matter Jurisdiction and on the Plaintiff, Sylvia Silvers' Motion for Class Certification. In light of the particular facts of this case, it is not only appropriate, but indeed necessary, to consider these two motions together.

### I.  THE FACTS

On September 1, 1970, Dade County enacted an ordinance authorizing the issuance of special obligation capital project bonds. Several months thereafter, Sylvia Silvers purchased five of these bonds, each having a face value of $5,000 and bearing an interest rate of 7½ percent. The bonds state on their face that commencing September 1, 1981, they would be redeemable at the option of the County. In order to notify bondholders of a redemption, the bond ordinance stated that, at least thirty days prior to the redemption date, the County shall: 1) publish

notice of the redemption in a daily Dade County newspaper of general circulation; 2) publish a redemption notice in a daily New York newspaper of general circulation; 3) file a notice with the banks acting as paying agents; and 4) mail notices to all registered bondholders.

Dade county decided to exercise its option to redeem the bonds on September 1, 1981, at which time the bonds ceased accruing interest. The uncontroverted testimony shows that Dade County gave the following notice: 1) timely publication of the notice in the *The Miami Herald*; 2) substantial compliance with the publication requirement in *The Wall Street Journal*; 3) timely filing of the notice with the paying agents; and 4) timely mailing of the notice to all registered bondholders.[1]

The Plaintiff alleges that she did not receive notice of the redemption until she endeavored to present her March, 1982 interest coupon for payment. The Plaintiff, who resides in Dade County, concedes that the notice was published in *The Miami Herald* which is delivered to her house daily. She stated in her deposition that she does not take an active interest in financial affairs and relies on her husband with regard to such matters. The deposition testimony of Plaintiff's husband reveals that he also failed to detect the admittedly timely publication of the notice in *The Miami Herald*. His testimony further reveals that prior to September 1, 1981, he knew that the bonds would be redeemable as of September 1, 1981. Despite the actual knowledge by the Plaintiff's agent-husband of the possible redemption, the Plaintiff did not inquire about a September 1, 1981 redemption and did not attempt to redeem her bonds until subsequent to March of 1982 when she presented the March 1, 1982 for payment. As a result of the six-month delay in presenting her bonds for redemption, Plaintiff alleges that she lost interest totaling approximately $1,400 for all five of her bonds.

## II. THE CASE

Sylvia Silvers filed suit in County Court seeking money damages for the recovery of the lost interest. After that case was fully argued, but prior to the entry of a judgment, she dismissed that action, and filed the instant cause in Circuit Court. The case in this Court is identical to the one which Sylvia Silvers dismissed in County Court, except that here she has added a class action request and a prayer for declaratory relief.

## III. THE ISSUE

The threshold issue is whether this Court has subject matter jurisdiction. Clearly Plaintiff's individual claim, which by her own admission approximates $1,400, is below the amount necessary to invoke this

---

[1] The Plaintiff concedes that she never exercised her right to register her bonds.

Court's jurisdiction. Thus, the Court must determine whether the allegations in the complaint form a sufficient basis for a class action.[2] If the County is correct in its argument that the certification of the class would be inappropriate, Sylvia Silvers is left only with her individual claim. Even if the Court determines that a class action[3] is appropriate, potential claimants in this type of class action cannot aggregate their claims to reach this Court's jurisdictional minimum. It is, therefore, essential that this Court make the determination whether the Plaintiff's Motion for Class Certification is well taken.

At previous hearings in this cause, specifically on plaintiff's Motion to Determine Class Representation held on February 14, 1983 and on defendant's Motion to Dismiss held on August 29, 1983, this Court orally indicated it believed this cause would be appropriate to proceed as a class action. After further review and analysis of the law, the Court now finds and determines that this cause should not go forward as a class action.

## IV. THE REPRESENTATIVE PARTY

### A. The Facts.

The point of departure is the principle of law that the class is formed around the Plaintiff—not that you find plaintiffs to fit the class. *Bartelson v. Dean Whitter & Co.*, 86 F.R.D. 657 (E.D. Pa. 1980).[4] Accordingly, any class which this Court might form would have to be a class that is factually in a position virtually identical to the position in which Sylvia Silvers finds herself. It is imperative, therefore, that the Court focus on the facts relating to Sylvia Silvers.

Mrs. Silvers did not attempt to redeem her bonds until subsequent to March 1, 1982, when she presented the March 1, 1982, coupon with

---

[2]The Plaintiff cannot bootstrap her claim to reach the jurisdiction of this Court merely by praying for declaratory relief. On its face it is clear, and this Court so finds, that her claim is merely one for money damages. She has alleged no facts to indicate that she is in doubt as to any legal rights.

[3]At the hearing held before the Court on February 14, 1982, the Court made the determination, based on arguments advanced on behalf of the Plaintiff, that she was proceeding only under a (b)(3) class. (See pp. 16, 17 of the transcript of hearing.)

[4]When interpreting the Florida class action rule, the Court relies extensively on federal court decisions. In 1980, the Florida class action rule, Rule 1.220, Fla. R.Civ.P., was extensively revised to follow Rule 23, Fed. R.Civ.P. relating to class actions. The committee note to the class action rule states that "the class action rule has been completely revised to bring it in line with moders practice. The rule is based on Federal Rule 23. . ." In fact, a comparison of the state and federal rules reveals that in substance and form, they are virtually identical.

payment. Accordingly, the earliest date at which any member of a class represented by Sylvia Silvers could have attempted to redeem his or her bonds would have been March 1, 1982.[5]

Another salient fact relates to the publication of the call notice. The Plaintiff concedes that the notice published in *The Miami Herald* strictly complied with the provisions set forth in the bond. She also admits that *The Miami Herald* is delivered daily to her home. It would, therefore, be imperative that every member of a class represented by Sylvia Silvers must have received *The Miami Herald* daily. To conclude differently would be to prejudice bondholders who did not have this legally sufficient constructive notice. The prejudice would be that those other bondholders, whether they lived locally or elsewhere, would be bound by a decision of this Court and by the facts of a plaintiff who actually had proper notice at her disposal, but was dilatory in not reacting to it.[6]

The third very important fact on which this Court relies is that Sylvia Silvers, through her husband and financial advisor, had daily access to *The Wall Street Journal*. Of significance is that it was five days late. Bondholders could still have received timely notice that the bonds were being redeemed on September 1. Sylvia Silvers had access not only to *The Miami Herald* notice, but to the notice in *The Wall Street Journal* as well.

B.   *The Law*

Rule 1.220(a)(4), Fla.R.Civ.P., requires that the court find "the representative party can fairly and adequately protect and represent the interest of each member of the class. The burden of demonstrating compliance with each of these prerequisites is on the party seeking certification. *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656 (N.D. Cal. 1976).

If the representative party seeks a remedy antagonistic to the interest of absent class members, he cannot adequately represent the class and

---

[5]It is both interesting and significant, although not necessarily legally dispositive, to note that the facts in this case disclose that of the 7,776 bondholders involved, 5,005 were paid in the month of September, 1981, i.e. the month in which the bonds were called. This number constitutes almost two-thirds of the total bondholders. Of these 5,005 coupons paid in September, 1981, 1,388 were paid on September 1, 1981, the call date.

[6]The Court believes that a reasonably diligent bondholder who either personally or through a financial agent received one newspaper daily, read both newspapers regularly and had actual notice of a possible redemption, could be considered dilatory in delaying approximately seven month in redeeming her bonds.

class certification must be denied. This result is mandated by consideration of due process of law. In *Nguyen Da Yen v. Kissinger, supra* at 665-66, the court stated:

> "Conflicts of interest, *especially antagonistic or diverging claims* preclude formulation of relief which will benefit all the members of the   class. *Antagonistic claims* thwart the adequancy of representation. . . ." Such a result is mandated by due process: the class action is an action taken in the name of absent parties and they will be bound by it. Class  members whose interests are antagonistic in fact to, *or even 'potentially conflicting'* with, the interest of the ostensible representative parties cannot be bound consistently with the requirements of due process." (Emphasis  supplied.)

This doctrine is well supported by the case law.[7] In *Phillips v. Klassen*, 502 F.2d 362 (D.C. Cir. 2974), *cert. den.* 95 S.Ct. 309, this principle was applied to facts similar to the facts at issue in the instant case. In *Klassen*, as in this case, the plaintiff questioned the validity of a single governmental action which affected a large class of people. Former post office employees who had accepted offers to resign with retirement benefits rather than face layoffs, sued for a declaratory judgment that their resignations were invalid because the government's offer was illegal.

The court refused class certification because the remedy sought by the representative party was antagonistic to the interest of those class members who were content with the agreement they had reached with the government. The court reasoned:

---

[7]*See Swain v. Brinegar*, 517 F.2d 766 (7th Cir. 1975) (in an action by owners of land in path of proposed highway, class certification denied where representative party sought to enjoin further action on project, but there was "at least a possibility that some landowners had already sold their land and were happy with their agreement with the state); *German v. Kipp*, 429 F.Supp. 1323 (W.D. Mo. 1977) (in an action alleging reverse discrimination by city fire department, class certification was denied because many of the city firemen benefited by the challenged affirmative action plan); *White v. Deltona Corp.*, 66 F.R.D. 560 (S.D. Fla. 1975). (In an action by purchasers of land against developers, class certification denied because purchasers who wished to retain their land and have it developed by defendant had interests that would be adversely affected by a multi-million-dollar damage suit); *Bolin Farms v. American Cotton Shippers Assoc.*, 370 F.Supp. 1353 (W.D. La. 1974) (class certification of farmers denied where representative plaintiff sought declaration that forward crop contracts were unenforceable but no showing was made that such a decision would be welcomed by or would benefit other farmers); *Wilson v. Kelly*, 294 F.Supp. 1005 (M.D. Ga. 1968) (class certification of prisoners denied where representative plaintiff prisoner sought to end county workcamps but where court was not convinced that all prisoners preferred prison over the camps).

"If plaintiffs are successful, all these employees, in each of these categories, will be governed by a ruling that all the resignations, the extension of annuities, and the payment of the bonuses, are and always were unlawful. . . ." When as here, there is complaint as to injury from an allegedly invalid action of a governmental official and the action may be taken as conferring economic benefits or working economic harm, depending on the circumstances of the individual, the foundations of maintenance of a class action are undermined. In view of the likelihood that there will be divergent views among the employees who pursued the voluntary retirement route, as to whether they have been injured or benefited, we cannot say the district court erred in concluding that plaintiffs cannot fairly maintain the action they have brought on behalf of more than 1,500 former employees. *Id* at 367.

## C. *Conclusion*

Sylvia Silvers is not representative of the class which she seeks to have certified. Most significantly, she does not represent the interest of the class. To the contrary, her interest is antagonistic to most members of the class. If the redemption were to be found invalid by this Court, the bondholders, whose 7½ percent bonds were redeemed at the time when the proceeds of the redemption could have been used toward investments earning substantially higher interest, would have to forfeit the favorable economic benefit which they received by the redemption, including a 4 percent premium payment by the County. Certain of these bondholders could suffer economic harm in that the proceeds that they received from the redemption may not be liquid at the time when they would have to repay the money they received upon redemption. To allow the class to be represented by a party who is seeking to invalidate the redemption when common sense indicates that most members of the class would oppose any ruling that would invalidate the redemption is ample legal reason to deny class certification. Furthermore, as discussed above, a ruling based on the facts presented by this Plaintiff may be detrimental and therefore prejudicial to the rights of other potential class members.

Additionally, the law states that the representative party must be able adequately and fairly to protect the interest of each class member. Competent counsel does not satisy the requirement that the representative party is knowledgeable. Sylvia Silvers, by her own admissions, lacks the fundamental knowledge required of the representative party. Her own sworn testimony states that she has no knowledge of any of the issues before the Court. As a matter of law, Sylvia Silvers is not an appropriate representative of any class, for she is in no position to aid her counsel.

## V. CLASS ACTIONS

Class actions are maintainable if issues common to the class *predominate* over issues relevant to individual class members. The mere finding that common issues exist, is entirely different from the (b)(3) question of whether those common issues *predominate. See J. Moore*, 3B *Federal Practice 2d*, Section 23.34425.

"In order to determine whether questions of law and fact common to the class do predominate, it is necessary to examine the issues and nature of the proof required at trial." *White v. Deltona Corp.*, 60 F.R.D. 560, 562 (S.D. Fla. 1975). "The more a trial will involve individual proof for each plaintiff's allegations, the less appropriate it becomes for class action treatment." *Seligson v. Plum Tree, Inc.*, 61 F.R.D. 343, 345 (E.D.Pa. 1973). ". . . [I]f there is present a likelihood that significant questions not only of · damages but of liability and defenses to liability will arise affecting only individual members of the class in different ways, class action treatment is inappropriate. *In re Transit Co. Tire Antitrust Litigation*, 67 F.R.D. 59,72 (W.D.Mo. 1975). In short, if the suit at trial will break down into a series of "minitrials", class certification should be denied. *Windham v. American Brands, Inc.*, 565 F.2d 59, 69 (4th Cir. 1977).

In addition, in a (b)(3) class action, the claims of the individual class members cannot be aggregated to meet jurisdictional requirements. "Each plaintiff in a. . .(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case. . . . *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973) (no aggregation of claims of individual lakeshore property owners against a polluter of a lake).

Moreover, if the primary object of a suit is money damages, commensurate with the separate injuries caused each individual, the parties are not enforcing "a common right or title in which they have a common and undivided interest." *See Eliason*, 93 F.R.D. at 413.

In *White v. Deltona Corp.*, 66 F.R.D. 560 (S.D. Fla. 1975), plaintiff homebuyers brought a suit against a developer seeking both specific performance and damages. The plaintiffs sought certification under (b)(3). The court held that "it is clear that each purported class member must meet the jurisdictional prerequisite. . . . 66 F.R.D. at 563. (In *White*, the court went on the deny (b)(3) certification on the ground that the problem of determining if each member met the jurisdictional amount made the class action unmanageable. *Id.*)

*Spears v. Robinson*, 431 F.2d 1089 (8th Cir. 1970), involved facts similar to the instant case in that it involved a class of bondholders. In

*Spears* the owner of a conferate bond issued by the State of Missouri sued for the bond principal ($20.00) and interest and cost (10% a year for 105 years). The plaintiff bondholder sought to bring a class action on behalf of all individuals in a similar position. The court refused jurisdiction: "This is not a true class action, and, therefore, the claims of the various members of the class may not be aggregated to reach the jurisdiction amounts." 431 F.2d at 1092.

## VI. *CONCLUSION*

Based on the foregoing, the Court concludes that the Plaintiff has not established the necessary prerequisites for class certification under the Florida Rules of Civil Procedure.

Moreover, Mrs. Silvers could have registered the bonds, received actual notice and avoided the precise situation in which she finds herself. Mrs. Silvers, or at least her husband, knew this. She chose not to do so. A deliberate decision on the part of the Plaintiff prevented her from receiving actual notice of the call. Moreover, she was able to reinvest dollars that were yielding 7½ percent interest at a rate of approximately double that amount. Equity does not cry out for relief in this case. On the contrary, equity and fairness mandate that this action not be maintained as a class action. A contrary conclusion would require the expenditure of this Court's time to determine which bondholders fit a class that would be represented by Sylvia Silvers. The Court would have to ascertain where each bondholder lived; whether he or she received actual notice prior to September 1, 1980, or March 1, 1982; whether he or she received *The Miami Herald*; and whether he or she received or relied upon the *The Wall Street Journal*. Of significance also is the fact that not one other person with a bond has come forward to complain, and well they should not. Each and every bondholder, including the Plaintiff in this case, benefited economically from the redemption.

Based on all the foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

1. That the Plaintiff Sylvia Silvers' Motion for Class Certification be and the same hereby is denied in its entirety.

2. That Plaintiff Sylvia Silvers' individual claim is below the jurisdictional amount of this Court, and hence this Court lacks subject matter jurisdiction of the cause.

3. That the gravamen of the complaint is for money damages and not declaratory relief.

4. That the complaint filed in this cause be dismissed in its entirety, with leave for the Plaintiff, if she so chooses, to file a complaint for money damages in the County Court.

5. That costs, to be determined at a later date, shall be taxed in favor of the Defendant, Dade County, and against the Plaintiff, Sylvia Silvers.

6. That this Court retains jurisdiction of this cause solely for the purpose of enforcing the provisions of this Final Judgment.