### In re DISPOSABLE CONTACT LENS ANTITRUST LITIGATION.

#### MDL No. 1030.

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 5, 1996.

Parker D. Thomson, Steven W. Davis, Thomson, Muraro, Razook & Hart, P.A., Miami, FL, R. Scott Palmer, Attorney General's Office Economic Crimes, Tallahassee, FL, for State of Florida and Robert A. Butterworth.

S. Perry Penland, Sr., Law Office of S. Perry Penland, Sr., Jacksonville, FL, Stuart D. Wechsler, Wechsler, Harwood, Halebian & Feffer LLP, New York City, for Gloria C. Runkles.

Douglas D. Chunn, Smith, Hulsey & Busey, Jacksonville, FL, Fred T. Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Steve W. Berman, George W. Sampson, Hagens & Berman, Seattle, WA, Leonard B. Simon, Dennis Stewart, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Jonathan W. Cuneo, The Cuneo Law Group, Washington, DC, C. Oliver Burt, III, Burt & Pucillo, West Palm Beach, FL, for Sue Downey, Michael L. Goldberg, Diana Lee, Pamela Clarke Keogh, Josetta Smith and John Morris.

Harold E. Kohn, Robert J. LaRocca, Michael J. Boni, Kohn, Swift & Graf, P.C., Philadelphia, PA, Douglas D. Chunn, Smith, Hulsey & Busey, Jacksonville, FL, Steven A. Asher, Barrack, Rodos & Bacine, Philadelphia, PA, for Mary E. New.

James Whitelaw Middleton, Joseph Stroud, Jr., Rogers, Towers, Bailey, Jones & Gay, Jacksonville, FL, Richard A. Ripley, Margaret M. Zwisler, Howrey & Simon, Washington, DC, Harry Osborne Thomas, Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, FL, James L. Magee, Graham & Dunn, Seattle, WA, for Johnson & Johnson Vision Products Inc.

Morton M. Maneker, Proskauer, Rose, Goetz & Mendelsohn, New York City, Thomas F. Cullen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Carole E. Handler, Alan H. Finkel, Proskauer, Rose, Goetz & Mendelsohn, Los Angeles, CA, Mark M. Hough, Marilee C. Erickson, Reed McClure, Seattle, WA, Harry R. Detwiler, Jr., Alford & Detwiler, Tallahassee, FL, for Bausch & Lomb, Inc.

Edward C. Larose, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Edward A. Groobert, D. Biard MacGuineas, Jr., Dykema Gossett, P.L.L.C., Washington, DC, Ellis Lyons, Bennett Boskey, Volpe, Boskey and Lyons, Washington, DC, Hal D. Hardin, Hal D. Hardin Law Offices, Nashville, TN, for American Optometric Ass'n., Lee Rigel, William David Sullins, Jr., L. Edward Elliott, John A. Gazaway, Richard Hopping, Earl L. Hunter, James C. Leadingham and Timothy Q. Kime.

Geoffrey Bogart Schwartz, Huey, Guilday & Tucker, P.A., Tallahassee, FL, Edward C. Larose, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., for Stanley Yamane.

James Edgar Cobb, Peek & Cobb, P.A., Jacksonville, FL, Chris S. Coutroulis, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, Randolph S. Sherman, Richard A. DeSevo, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Ciba Vision, Inc.

Robert S. Hackleman, Gunster, Yoakley & Stewart, P.A., Ft. Lauderdale, FL, for Lens Express.

James L. Schmidt, II, Law Office of James L. Schmidt, II, Longwood, FL, for General Lens Corp.

Alan P. Rosefielde, Law Office of Alan P. Rosefielde, New York City, for Fastlens, Inc.

## *ORDER*

SCHLESINGER, District Judge.

Before the Court is Defendants' Motion to Dismiss Class Plaintiffs' Consolidated Complaint for Failure to State a Claim (Doc. No. 28) and supporting memorandum (Doc. No. 29), to which Plaintiffs filed a response (Doc.

No. 35), and Defendants were granted leave to refile a reply to Plaintiffs' response (Doc. No. 43). Defendants' Motion for Leave to File Supplemental Motion to Dismiss Plaintiffs' Complaint (Doc. No. 97), which Plaintiffs oppose (Doc. No. 100), is DENIED, as the Court can decide Defendants' motion on the record before it.

Also before the Court is Plaintiffs' Motion for Class Certification (Motion) (Doc. No. 32) and supporting memorandum (Memorandum) (Doc. No. 33), to which Defendants filed a memorandum in opposition (Response) (Doc. No. 39) and Plaintiffs filed a reply memorandum (Reply) (Doc. No. 44). The Court held a hearing on both motions, including hearing extensive testimony from both parties' experts on the motion for class certification. *See* Transcript of Hearing on Motions, Doc. Nos. 57–58.

### BACKGROUND

Plaintiffs filed their Consolidated Complaint (Complaint) alleging that Defendants Johnson & Johnson Vision Products, Inc. (Vistakon), Bausch & Lomb, Inc. (B & L) and CIBA Vision Corporation (CIBA), the largest manufacturers of contact lenses in the United States, have unlawfully conspired among themselves and with two trade organizations[1] for eye care practitioners (ECPs), to restrict the supply of replacement contact lenses[2] to alternative channels of distribution.[3] Plaintiffs are contact lens wearers from across the country who have purchased replacement lenses from ECPs at "supra-competitive" prices, who have marked-up prices on replacement lenses as much as 100%. Complaint at ¶ 1; Memorandum at 2.

### MOTION TO DISMISS

Defendants move for dismissal on the grounds that Plaintiffs' theory of injury does not provide them antitrust standing under the principles of *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). After reviewing the papers submitted and the relevant law, the Court finds that Defendants' motion to dismiss (Doc. No. 28) is due to be and is DENIED. The Court has carefully considered the arguments propounded by Defendants in the related cases in this action, and has determined that Plaintiffs are not barred from bringing this action. *See* Doc. No. 57 in Case No. 94–1215–Civ–J–20 and Doc. No. 79 in Case No. 94–619–Civ–J–20. Accordingly, the Court will consider Plaintiffs' motion to certify this case as a class action under Fed.R.Civ.P. 23(b)(3).

### MOTION FOR CLASS CERTIFICATION

Plaintiffs seek to certify a putative class of replacement contact lens purchasers, defined as follows:

> All purchasers of Vistakon, B & L and CIBA replacement contact lenses from eye care practitioners during the period 1988 to the present, excluding consumers in Florida represented by the Florida Attorney General in *State of Florida v. Johnson & Johnson Vision Products, et al.,* Case No. 94–619–Civ–J–20.

Motion at [unnumbered] 1. Plaintiffs request that this action proceed as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

Rule 23, Fed.R.Civ.P., sets forth the requirements for certifying and maintaining a class action. The rule provides, in pertinent part:

> (a) Prerequisites to a Class Action. One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that

---

**1.** The two trade organizations are the American Optometric Association (AOA) and the Contact Lens and Anterior Segment Society, Inc. (CLASS). See Complaint at ¶¶ 1, 37(d). Only the AOA was made a party to this action, as CLASS filed a suggestion of bankruptcy shortly after this action was filed. Complaint at ¶ 20; Memorandum at n. 2.

**2.** The lenses that are the subject of this lawsuit are disposable contact lenses which are designed to be worn for a short period of time, ordinarily one to two weeks, and then thrown away and replaced with an identical fresh pair of lenses. Disposable lenses are usually sold in multipaks of six pairs of lenses. Complaint at ¶ 4; Memorandum at 3.

**3.** Pharmacies and mail order businesses.

joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior over any other available method for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(a), (b)(3). Thus, "[i]n order to maintain a suit as a class action, plaintiffs must show that the four prerequisites of Rule 23(a) have been met and that one of the provisions of Rule 23(b) applies." *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427 (S.D.Fla.1991) (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n. 2 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988)). The Court must further find that the class representative is a member of the class and that the class has been precisely defined. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977).

 Those seeking to certify their suit as a class action bear the burden of establishing the specific prerequisites of Rule 23. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). In this sense, "[a] Court can only certify a class 'after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Kaser v. Swann*, 141 F.R.D. 337, 339 (M.D.Fla.1991) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982)). In *In re Amerifirst*, the court set forth the inquiry as follows:

[i]n determining whether the named plaintiffs have met their burden, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore, the court shall not consider the merits of the plaintiff's claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); *Kirkpatrick*, 827 F.2d at 722; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). However, this principle should not be invoked so rigidly so as to artificially limit a trial court's examination of the factors necessary to make a reasoned determination of whether Rule 23 has been satisfied. *Love v. Turlington*, 733 F.2d at 1564. Accordingly, a court may look beyond the pleadings in determining whether a motion for class certification should be granted. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752 (1982); *Kirkpatrick*, 827 F.2d at 722.

*In re Amerifirst*, 139 F.R.D. at 427.

Finally, the Local Rules of the Middle District of Florida set forth other distinct requirements. Local Rule 4.04(a) mandates that the Complaint contain "detailed allegations of fact showing the existence of the several prerequisites to a class action as enumerated in Rule 23(a) and (b), Fed.R.Civ.P." Additionally, Rule 4.04(b) provides, in pertinent part, that "[i]f a determination is sought that the action be maintained under Rule 23(b)(3), the motion shall also suggest the means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), Fed. R.Civ.P."

### A. Rule 23(a) Requirements

#### 1. Numerosity

 The first prong of Rule 23(a) mandates that the class be so numerous that joinder of all members is impracticable. In

order to satisfy this requirement, the plaintiffs generally must proffer some evidence or reasonable estimate of the number of members comprising the purported class. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981).[4] The Court finds that Plaintiffs have satisfied their burden with respect to this requirement.

■ Numerosity does not appear to be an issue in this case. Plaintiffs allege the class includes millions of soft contact lens wearers located throughout the United States. Based on a total market size of approximately twenty million wearers of soft contact lenses in the country, and that ECPs enjoy a 90% or greater share of the replacement lens market, Plaintiffs estimate the class to consist of between 15,000,000 and 18,000,000 members. Memorandum at 7 and Exhibit B; Complaint at ¶ 36. Joinder of all class members clearly would be impracticable. *See, e.g., In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677 (N.D.Ga. 1991) (certifying class of approximately 12.5 million airline ticket purchasers). Defendant does not contend that Plaintiffs have not met the numerosity requirement.

*2. Common Questions of Law or Fact and the Predominance of these Questions Over Individual Questions*

■ The second factor under 23(a) requires that there be questions of law or fact common to the class. This provision does not require a complete identity of legal claims. *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). "Rather the requirement is usually satisfied if all class members are in a 'substantially identical factual situation' and the 'questions of law raised by the plaintiff are applicable to each class member.'" *In re Amerifirst*, 139 F.R.D. at 428 (quoting, *Weiss v. York Hospital*, 745 F.2d 786, 809 (3rd Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)). Commonality is satisfied when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982).

The Court will consider the Rule 23(a)(2) (commonality) and Rule 23(b)(3) (predominance) requirements together in this opinion, because the question of whether there are common issues is closely related to the question of whether these common issues predominate. *See Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D.Ill.1989).

Plaintiffs contend the following questions of law and fact are common to the class:

(1) Whether Defendants violated Section 1 of the Sherman Act;

(2) The existence, duration, and illegality of the alleged combination, contract, and/or conspiracy;

(3) Whether Defendants are or were members of, or participants in, the alleged combination, contract, and/or conspiracy;

(4) The fact of injury, including the impact and extent of injury sustained by class members; and

(5) Whether class members are entitled to injunctive relief.

Memorandum at 8. Plaintiffs contend that because every class members purchased Vistakon, B & L or CIBA replacement lenses from an eye care practitioner, who Plaintiffs contend are the "intended beneficiaries of the contract to eliminate competition so as to keep prices high," each class member can prove the antitrust violation with evidence of the same conspiracy. Thus, the argument goes, common issues of law and fact exist. *Id.* at 8–9.

Defendants do not contend that common questions of law and fact are not presented in this case. Rather, Defendants focus the gist of their argument on the predominance requirement, contending that the "unique facts" establish that common questions do not predominate over individual questions with respect to any of essential elements of Plaintiffs' antitrust action, but, in particular, the impact requirement. Response at 8.

---

**4.** All cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, are binding on the Eleventh Circuit and on all district courts within the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Defendants cite the Court to two recent state court decisions [5] in which the courts denied class certification to putative classes of contact lens consumers.

In *Harbin,* plaintiffs alleged that Vistakon and B & L, two of the defendants in this case, conspired with the AOA to preclude the distribution of defendants' contact lenses through alternative suppliers, in violation of state antitrust law. Plaintiffs sought to certify a class of contact lens purchasers of defendants' lenses during a specified period. The Alabama court held a one-day evidentiary hearing in which the two witnesses testified for the defendants. Without discussing its reasoning in any detail, the court found that plaintiffs did not meet the predominance requirement because:

> [i]ndividual questions of fact predominate over questions of fact common to members of the alleged class, because, among other reasons, to establish the requisite fact of injury (or "impact") as well as measurement of damages, each and every purchaser of defendants' contact lenses have to be questioned to ascertain that he or she had (a) purchased contact lenses from an Alabamian ECP or retail optical chain, (b) during the applicable time, (c) in some certain amount, and (d) at a certain price.

*Id.* at 2–3. *Lethbridge* involved a similar action in California in the which the court denied certification because "the liability issue of antitrust injury (impact), as well as the issue of damages cannot be established through common proof ... [as] plaintiff [would] have to establish that all class members paid higher prices as a result of the conspiracy." *Id.* at 2. Since it determined that there are "many different chains of causation affecting individual pricing and purchasing decisions" which would require individualized inquiry, the Court found that class certification was inappropriate.

While it is not proper to reach the merits of a claim when determining class certification, *Love,* 733 F.2d at 1564, in making its predominance determination the Court must determine whether Plaintiffs have made a

threshold showing that the proof they intend to offer at trial of the alleged conspiracy will be sufficiently generalized in nature to warrant certification of the class. 137 F.R.D. at 685. The substantive law underlying Plaintiffs' claim for alleged antitrust violation is § 4 of the Clayton Act. To recover treble damages under this section, Plaintiffs must prove: "(1) that defendants violated the antitrust laws; (2) that the alleged violations caused plaintiffs to suffer some injury to their 'business or property;' and (3) that the extent of this injury can be quantified with requisite precision." *Id.* at 685 (citation omitted).

■ Defendants first assert that Plaintiffs' claim is a "vertical conspiracy" between the AOA and each Defendant which will necessarily require separate inquiry with respect to each manufacturer to determine whether the evidence as to that defendant establishes that its policy of not selling to alternative suppliers was the product of the alleged coercive activities of the AOA and CLASS rather than unilateral decision-making. Defendants cite the Court to cases alleging vertical conspiracies in which courts have denied certification on the ground that proof of illegal conduct may not be accomplished by generalized means. *See* Response at n. 13. Defendants also contend individual issues predominate concerning Plaintiffs' proof of antitrust injury or "impact" to class members. According to Defendants, Plaintiffs have failed to come forward with any viable theory employing generalized proof that "absent the alleged boycott, *all* eye care practitioners 'would have to have lowered their prices' to *each and every* absent class member." Response at 12 (emphasis in original).

Plaintiffs reply to Defendants' first argument that they are not alleging a series of separate, unrelated conspiracies, but a "plan of action" between the three manufacturers and the AOA and CLASS to eliminate alternative channels of distribution, a so-called "hub and spoke" conspiracy which involves only a discrete handful of defendants, unlike in the cases cited by Defendants. Reply at

---

**5.** *Harbin v. Johnson & Johnson Vision Products, Inc.,* Case No. CV94–002872 (Ala.Cir.Ct., Sept. 12, 1995) and *Lethbridge v. Johnson & Johnson* *Vision Products, Inc., et al.,* Case No. BC113271 (Cal.Super.Ct., June 26, 1996).

4–8. Further, Plaintiffs respond Defendants have misstated the impact element of their claim, which Plaintiffs contend is "conceptually simple:" that "Defendants' conspiracy to eliminate competition to eye care practitioners maintained artificially inflated prices for replacement contact lenses nationwide." Reply at [unnumbered] 1–2. According to Plaintiffs, the conspiracy (1) eliminated competition to eye care practitioners from alternative channels of distribution, (2) deprived consumers of alternative sources for their purchases of replacement lenses, and (3) insulated eye care practitioners from having to price replacement lenses competitively. Plaintiffs contend that "whether eye care practitioners, having benefitted for years from the conspiracy, might now profess that they would not have lowered their prices if faced with competition is irrelevant to the legitimate question with respect to impact— *whether the price that each class member actually paid was supracompetitive.*" Reply at 3 (emphasis in original).

The Court rejects both of Defendants' arguments. As to the first, that this is a vertical conspiracy which is not susceptible to common proof, the Court is satisfied that Plaintiffs have made a threshold showing that the proof they intend to offer at trial of the alleged conspiracy will be sufficiently generalized in nature to warrant certification of the class. In this case, the alleged conspiracy involves parallel agreements reached between the leading trade associations and the three largest contact lens manufacturers. Plaintiffs have produced evidence from which a reasonable juror could infer there was agreement to limit the supply of replacement lenses. "[P]roof of consciously parallel business behavior is circumstantial evidence from which an agreement, tacit or express, can be inferred.... [however t]he evidence must give rise to more than speculation." *Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 1013 (3rd Cir.1994) (noting that "a particularly detailed memorandum of a telephone call can give rise to a reasonable infer-

ence of agreement"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). Again, the Court need not determine at this juncture whether Plaintiffs ultimately will prevail on the *merits* of their claims; that is for the jury to decide.

Likewise, Defendants' argument that Plaintiffs cannot prove impact using generalized proof is without merit.[6] The Court agrees that the impact element of an antitrust cause of action is the key to class determination *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 320 (5th Cir.1978). In *Blue Bird,* the Fifth Circuit reversed the trial court's national certification of a class of government entities alleging a conspiracy among school bus body manufacturers and distributors. The defendants had argued that because school buses were unique products made to customer specifications and *sold through various pricing procedures,* plaintiffs could not present common proof of a nationwide conspiracy. In making its ruling, however, the court did not deny certification because the industry was fragmented and heterogeneous, as defendants argued. Rather, the court found that plaintiffs had failed to show *what type of proof was available* on their claims; therefore, it was unable to make a determination. 573 F.2d at 322–23. In this case, Plaintiffs have come forward with a considerable amount of evidence [7] concerning the alleged antitrust violation. The Court finds that Plaintiffs have demonstrated at least a "colorable method" of proving impact at trial. *See generally* 7B C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1781 (1986); Solow Declaration; Solow testimony, Doc. No. 58. That Defendants' expert disagrees with the methodology and conclusions propounded by Dr. Solow is not reason to deny class certification. Whether or not plaintiffs will be successful in persuading the jury that there has been a common impact remains to be seen. For purposes of this motion, however, the Court finds Plaintiffs' allegations and the methodology they will advance to prove their claims

---

**6.** The cases cited by Defendants, *Harbin* and *Lethbridge,* are not controlling, nor are they helpful to the determination in this case. Neither case provides sufficient detail of the particular facts of that case and the evidence presented for

the Court to apply their reasoning to the facts of this case.

**7.** Some of which has been submitted under seal.

are sufficient to satisfy Rule 23. *See also In re Domestic Air Transportation,* 137 F.R.D. at 687–88 (finding that for purposes of class certification, air passenger service is a standardized product, in spite of the many pricing alternatives offered by defendants, as there is an order in those pricing alternatives). Accordingly, the Court concludes that the commonality requirement is met, and that common issues predominate over individual issues.

### 3. Typicality

The test for typicality, like commonality, is not demanding. *Shipes v. Trinity Industries,* 987 F.2d 311, 316 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993). The typicality factor requires that the claims of the representative parties be typical of the class claims. "The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations." *Tapken v. Brown,* (1992 Transfer Binder) Fed.Sec. L.Rep. (CCH) ¶ 96,805 at 93,175, 1992 WL 178984 (S.D.Fla.1992) (citing, *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985)). *See also Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985) (stating that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences").

In the case at hand, all class members' claims arise from the same alleged practices of Defendants which gave rise to the named Plaintiffs' claims: that Defendants' conspiracy to restrict channels of distribution of lenses resulted in each plaintiff paying supra-competitive prices for their replacement lenses. Furthermore, the same legal theory is advanced on behalf of each proposed class. Accordingly, the Court finds that the low threshold requirement of typicality is easily met in this case.

### 4. Adequacy

The adequacy requirement actually consists of two inquiries. First, the representative must not possess interests which are antagonistic to the interests of the class. *Kirkpatrick,* 827 F.2d at 726. Second, Plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the claim. *Id.* The Court finds that the adequacy requirement is met in this case. Plaintiffs and the class members for whom they would represent have sufficient identity of claims that Plaintiffs' interests would not be antagonistic to the interests of the class. The Class Plaintiffs each have purchased replacement contact lenses from an eye care practitioner which were manufactured by one of the three Defendant manufacturers. Each allege they were overcharged for those lenses resulting from the conspiracy to restrict the channels of distribution. It is of no moment that one Plaintiff purchased her lenses from CIBA, and another from Johnson & Johnson. Each named Plaintiff has a common interest in representing all class members, as the alleged conspiracy involves a nationwide plan to elimination competition to ECPs between all three manufacturers and the trade association that represents eye care practitioners. Moreover, Plaintiffs are represented by counsel who appear to be experienced and competent to litigate a complex antitrust class action.

## B. Requirements of Rule 23(b)(3)

### 1. Predominance of Common Issues

Plaintiffs seek certification under 23(b)(3). In order to determine whether questions of law and fact common to the class predominate, it is necessary to examine the nature of the proof required at trial. *White v. Deltona Corp.,* 66 F.R.D. 560, 562 (S.D.Fla.1975). As discussed, Plaintiffs have met this requirement.

### 2. Superiority

The determination of whether a class action is superior to individual actions is discretionary and is primarily determined by considering "whether the class action is superior to, and not just as good as, other avail-

able methods of handling the controversy." *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 529 (M.D.Ala.1992) (citing *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668 (9th Cir.1975)). The Court finds that in cases such as this one, in which there exist a large number of small or medium-sized claims against Defendants which would make individual litigation economically infeasible, a class action is a superior method of litigation. *See, e.g., In Re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 732 (N.D.Ill.1977); *Brady v. LAC, Inc.,* 72 F.R.D. 22, 28 (S.D.N.Y.1976).

As the Court concludes that all the requirements for class certification have been met, certification under 23(b)(3) is appropriate.

Finally, the Court has received correspondence concerning potential settlement by one of the Defendants in this case, and concerns on the part of another Defendant that such information would lead the Court to consider the potential settlement when ruling on Plaintiffs' motion for class certification. The Clerk is directed to docket the two letters so that they remain part of the record.

In reaching its decision, the Court was in no way influenced one way or the other by the fact there may be a potential settlement between Plaintiffs and one of the Defendants only if a class is certified. As outlined herein, the Court independently has determined this case meets the requirements for class certification.

### CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED:**

(1) Defendants' Motion to Dismiss Class Plaintiffs' Consolidated Complaint for Failure to State a Claim (Doc. No. 28) is **DENIED;**

(2) Plaintiffs' Motion for Class Certification (Doc. No. 32) is **GRANTED;** in that

A class is certified, pursuant to Rule 23(b)(3), defined as follows:

All purchasers of Vistakon, B & L and CIBA replacement contact lenses from eye care practitioners during the period 1988 to the present, excluding consumers in Florida represented by the Florida Attorney General in *State of Florida v. Johnson & Johnson Vision Products, et al.,* Case No. 94–619–Civ–J–20; and

(3) The Clerk is directed to docket the correspondence received from Defendants CIBA and Johnson & Johnson.